# Julian, Insurance Commissioner v. Guarantee Life I. Co.

*Bill to Restrain Revocation of License to do Business in This State.*

(Decided April 21, 1909.  49 South. 234.)

1. *Rebate; Insurance; Contracts.*—Rebate is deductions from stipulated premiums allowed in pursuance of antecedent contracts; hence, a life insurance company issuing contracts providing for a special income in consideration of the rendering on request by insured of certain services to the company does not violate the provisions of section 4579, Code 1907; the services which insured obligates himself to perform afford a consideration for the obligation assumed to allow a special income, although it is optional with the company to demand the service.

2. *Insurance Contract; Statute; Class.*—Where a life insurance company issues contracts providing for a special income in consideration of the insured rendering services to the company on request and providing for the creation by the company of a dividend fund for the class holding such policies, etc., does not violate sections 4579, Code 1907, since the word class qualifies policy holder, and means the holders of like contracts.

APPEAL from Montgomery City Court.

Heard before Hon. A. D. SAYRE.

Bill by the Guarantee Life Insurance Company against Frank N. Julian, Insurance Commissioner seeking to permanently restrain and enjoin said commissioner from revoking the license of the company to do business in Alabama. Decree for complainants respondent appeals. Affirmed.

ALEXANDER M. GARBER, Attorney General, and THOMAS W. MARTIN, Assistant Attorney General, for the State. The questions presented for adjudication are, whether the policy attached to the original bill is violative of section 4597 and 7188, Code 1907, and whether if, in violation of it, the Insurance Commissioner may

[Julian, Insurance Commissioner v. Guarantee Life I. Co.]

revoke the certificate of authority under section 5551, Code 1907. Counsel discuss the features of the policy and the statute and insist that they are violative of the statute to such an extent as to authorize the revocation of the license, and they cite:—*Urwan v. N. W. Nat. Ins. Co.,* 125 Wis. 349; *Citizens L. I. Co. v. Comm. Ins.,* 128 Mich. 85; *State L. I. Co. v. Strong,* 127 Mich. 346.

MASSEY WILSON, for appellee. Counsel discuss the sections of the Code bearing upon the question and insist that the Commissioner was without authority to revoke the license, citing.—26 A. & E. Ency of Law, 661. Counsel insist that the remedy was by quo warranto, and cite.—77 Ia. 648; 34 Am. St. Rep. 573; 87 Am. St. Rep. 449; *Block v. O'Conner,* 129 Ala. 528. Counsel further insist that injunction is the complainant's remedy.—19 Cyc. 1288.

McCLELLAN, J.—The license of the Guarantee Life Insurance Company, incorporated under the laws of the state of Texas, to do business in this state, was attempted to be revoked by the Department of Insurance of Alabama, as is authorized, in defined cases, by Code 1907, § 4551. The official communication notifying the company of the action taken makes the basis of the revocation violation of Code 1907, §§ 4579, 7188. The latter section (7188) merely penalizes the nonobservance of the provisions of section 4579. The object of the bill, filed by the company, is to permanently restrain the Insurance Commissioner from revoking its right to do business in this state. The action of the court, properly invited, resulted in the ruling, in effect, that the company had violated no law of this state, and that the action of the commissioner in the premises was unwarranted.

A copy of the policy contract which led the Insurance Department to take the action indicated is exhibited with the bill, and the features of the contract assumed to afford the law's violation may be thus summarized: (1) That it provides two limitations on contracts bearing the "special annual income" clause, viz: (a) The issuance of $10,000,000 of such policies; (b) the issuance of such policies after October 1, 1917, covering a period of 10 years. (2) That it provides a special income, of shares of $1 each for each $1,000 of the face value of each policy of the character bearing such clause, and which income shall be ascertained annually, at the end of each calendar year, and be payable to the policy holder, in his proportion, upon the anniversary of his policy, subject to the payment of the premium on such policy. (3) That it provides as a consideration for such special income that the insured shall render services to the company, upon request thereby, such as reporting upon fitness and desirability of agents or applicants therefor, information regarding applicants for insurance and regarding those applying for reinstatement on lapsed policies, and information or knowledge respecting claims against the company that might aid in protecting it from unjust claims. (4) That it provides for the creation and maintenance by the company of a dividend fund for the class holding such policies, the amount thereof being "$2 from each renewal premium (renewal here seems to mean each annual payment of the premium) paid on each $1,000 of insurance issued and continued on this plan," and to improve this fund at the average net rate of interest earned by the company upon its loaned assets, not exceeding 6 per cent.; that this fund shall be distributed, at the end of 20 years from the date of issuance of the policies that have persisted for that period, "in proportion to the net amount of in-

surance in force on the life of each policy holder in said class"—the mentioned class being those holding policies issued during the same year—or the distributive share mentioned may be employed, at the end of the stated period, in purchasing additional insurance. We think these comprise all of the alleged objectionable features of the appellee's policy contract.

It is proper to note in this connection that we have before us only the bill, its exhibits indicated, and the demurrer, etc., assailing it. If comparison of the policy in question with any others of this or other companies were permissible, that course is impossible here. The only provisions of the cited statute said to be infracted by the policy exhibited with the bill are these: "Nor shall any such company or agent pay or allow, or offer to pay or allow, as inducement to insurance, any rebate of premiums payable on the policy, nor shall any particular policy holder of the same class be allowed any advantage in the dividends or other benefits to accrue thereon, or any valuable consideration or inducement whatever not specified in the policy contract of insurance." It is assumed that the stipulation in the last sentence quoted, with reference to specification in the contract of consideration or inducement, qualifies only that feature of the statute from further notice, thus resolv ing the question to the two preceding provisions quoted. One of these inhibits a "rebate of premium payable on the policy" in order to induce insurance, and the other forbids discrimination between "policy holders of the same class."

In the first provision the key word to construction is "rebate." In Webster it is defined: "To abate or deduct from." From *State v. Ins. Co.*, 38 La. Ann. 465, 7 Words and Phrases, p. 5986, deduces this definition: "Deductions from stipulated premiums allowed in pursuance

of antecedent contract." It is also elsewhere defined as a "drawback" and "abatement." Waiving other considerations possible and leading to the same result, it is too apparent for doubt that the share system created bears no relation to a rebate, for the obvious reason that the policy holder must afford, and does, if he secures the share —provided, the consideration for it by particular services to be performed—services of evident value and utility to the safe conduct of the business of the company. It will not do to say that such services afford no consideration for the obligation assumed by the company to allow a special income. The insured and the insurer each obligate themselves in that regard; and we know of no reason, and apprehend there is none, to pronounce such an engagement a subterfuge, an evasion. That a policy holder of the class in question may not, in fact, be called upon to render the services he has bound himself, upon request, to perform, might be an argument of force in determining the financial wisdom of maintaining such a system; but, when the insured has bound himself to perform services of an entirely reasonable and practical nature, and the insurer has contracted with him on the faith of the assurance, though it be at the insurer's option to demand the services, it could be no more than bare assumption to not only strike from the contract the element involved, but to impeach the bona fides of the arrangement, with the result that a violation of the statute against rebates in insurance dealings might be imputed to the insurer, or to its representatives writing the contract. In short, the share proportionately due, upon the conditions defined, to the policy holder of the described class, must be ascribed for its consideration to the services promised by the insured, as the contract provides. Hence such share is not a drawback, an abatement, of the premium, but is a benefit arising from

the obligation of the insured to perform the services stipulated for.

The other features said to be offensive to the statute, because they work a discrimination, are likewise not well assailed on that account. The key word to construction of this provision of the statute is the word "class." As therein employed it has no reference to the individual characteristics of the policy holder. It refers to that number of persons who hold similar policy contracts. If it were construed to mean those of like individual characteristics, for instance, of age, family history, or state of health at the time of insurance, the result would necessarily be that an insurance company could not vary its policies, but would be bound, under that interpretation of our status, to conform the policy contract to the individual characteristics of the applicants for insurance. Such a regulation would impair the right of contract, without justification under the police or other power of the state to control the exercise of the right of contract. Furthermore, the phrase "of the same class" qualifies the term "policy holder," and hence "class" clearly means the holders of like policy contracts. To read the provision otherwise is to distort its obvious meaning.

Measuring the policy contract, exhibited with the bill, by the stated interpretation of this provision of the statute, there is left no doubt that by the very letter of the policy contract each policy holder insured thereby is accorded equal advantages and is given no unmerited benefit. Consequently the decree appealed from will be affirmed.

Affirmed.

DOWDELL, C. J., and ANDERSON and MAYFIELD, JJ., concur.