Emilie Fogg, Respondent, v. The Morris Plan Insur-
ance Society, Appellant.

(Supreme Court, Appellate Term, First Department, November,
1920, Term — Filed June, 1921.)

Principal and agent — when limitation of agent's authority should
be unequivocal — life insurance — " Morris Plan " — in-
terlocking companies — acceptance of overdue premiums —
waiver.

   Where an agent is in complete control of a business a limita-
tion upon his authority should be unequivocal.

   In an action brought by the beneficiary under a policy of
life insurance issued by " The Morris Plan Insurance Society "
in connection with a loan of money by the " Morris Plan
Company " the defense was that the policy had lapsed for non-
payment of premiums and had not been reinstated. It was
admitted, however, that prior to the death of the assured, all
premiums · had been paid in full to the " Company." Held,
that whether the policy lapsed or not, plaintiff must prevail if
the " Company " had power to bind the " Society " and rein-
state the policy by its acceptance of overdue premiums.

   Where from the record on appeal by the defendant from a
judgment in favor of plaintiff entered on a verdict, it appears
that the defendant " Society " in truth and in fact was nothing
more nor less than an adjunct or feeder or instrumentality of
the " Company " and the evidence discloses that these inter-
locking companies in conducting their joint and interlocking
business placed in each other a most explicit trust and that
only in the most technical sense can the Company be regarded
as the Society's agent, yet it must be held that the " Company "
had authority to waive the lapse in the payment of premiums,
if lapse there was, and the judgment appealed from will be
affirmed.

Appeal by defendant from a judgment of the
Municipal Court of the city of New York, borough of
The Bronx, second district, in favor of the plaintiff,
entered upon the verdict of a jury, and from an order
denying defendant's motion for a new trial.

Satterlee, Canfield & Stone (R. Randolph Hicks, of counsel), for appellant.

Max Gelles, for respondent.

Mullan, J. The action is brought by a beneficiary named in a policy of life insurance issued by the defendant company, hereinafter called " Society," in connection with a loan of money by the Morris Plan Company, hereinafter called " Company." The defense is that the policy lapsed for non-payment of premiums, and that it was not reinstated. As the premiums were admittedly paid in full to Company prior to the death of the assured, plaintiff must prevail, whether or not the policy lapsed, if Company had the power to bind Society and reinstate the policy by its acceptance of overdue premiums. In order to ascertain Company's powers it is necessary to inquire into the relationship of the two corporations with each other, to examine the contract under which they were operating, and to discover their methods of dealing with Society's insurance business.

It appears that sometime prior to 1914 Company was incorporated for the avowed purpose of lending to worthy borrowers small sums of money, without the deposit of chattel security such as is required by pawnbrokers. That the lending of small sums is an enterprise that must be conducted at a loss unless more than six per cent interest is obtained is admitted by financial experts, and recognized by statutes permitting the pawnbroker to charge from twenty-four per cent to thirty per cent per annum. Company proposed to secure its loans, and an adequate return thereon, in the following manner, designated and widely known as the " Morris Plan." The loan is guaranteed by friends of the borrower, and must be repaid in instalments.

At the time of making the loan, interest at six per cent is deducted therefrom, and Company secures a further return on its investment by compelling the borrower to purchase, in instalments, all of which are payable before repayment of the loan is due, a certificate of Company in amount equal to the amount of the loan. This certificate is pledged as collateral, and, when fully paid for, may be applied in satisfaction of the loan. Company in this way secures approximately fifteen per cent on its loan. Its plan is permitted by special statute, and has met with such marked success that in 1914 Company maintained offices in 104 cities in the United States, and had lent nearly $7,000,000.

In 1917, Company added to its plan a provision that the life of the borrower be insured for the amount of the loan, the policy being payable *pro tanto* to Company for any part of the loan unpaid at the death of the borrower. Whether distaste to enforce the loan against the guarantors, or the expense of such enforcement, or the profit in the insurance, was the motive for this innovation, does not appear. At all events, Society was, in 1917, organized to effectuate the new feature of the plan by writing the insurance the plan called for, and, immediately upon its organization, it appointed Company " its exclusive agent," by agreement in writing under which Company agreed to use its best efforts to induce " every borrower " and investor under the Morris Plan, " as well as other desirable persons," to make application to Society for insurance. Society transacted no other business than the issuing of life insurance policies securing Company's loans. It initiated no insurance business. Under this agreement Company was authorized to deliver the policies, and undertook to " collect *all* premiums," to " endeavor to collect *all* premiums in

advance,'' and to account to Society therefor on Tuesday of each week, the account books so kept being the books of Society. The agreement contains no provision expressly forbidding the acceptance by Company of an overdue premium, the only limitation of its authority being that contained in paragraph 7 reading thus: '' It is understood and agreed that the Company is not authorized to make, alter, change or discharge premiums, contracts, or policies, or bind the Society or represent the Society in any manner other than is set forth in this agreement unless authorized in writing.''

On May 5, 1919, when Company and Society were operating under the plan as I have briefly outlined it, plaintiff's husband applied to Company for a loan of $500. Printed instructions were given to him by Company containing directions for filling out and executing the necessary papers, and stating that insurance for the term of one year, '' sold through the Company,'' could be secured by weekly payments of fifty cents a week for a number of weeks determined by the age of the borrower, and stating further that such insurance is '' optional with the borrower. The Company recommends it, but it is not a requirement of the loan.'' Although a pamphlet given to the assured by Company at the time contained the statement that only two guarantors were necessary, he was required to produce four, all of whom appear to have been satisfactory to Company. Nevertheless, for some reason the making of the loan was delayed. On May 28, 1919, the assured concluded that it would be to his interest to apply for the life insurance policy referred to by Company, and on that day, upon his making application to Company for insurance, and paying $5, stated by Company to be premiums on the policy for ten weeks, Company made the loan, the assured receiving

the sum of $460, representing $500, the amount of the loan, less $35 interest retained by Company, and less $5 payment on account of insurance premiums. He was to pay for Company's certificate at the rate of $50 per month on the second day of each month, beginning with July, 1919.

While the agreement between Company and Society does not require a medical examination of the applicant, but merely that Company shall see the applicant and " believe him to be in good health," a medical examination was made in this instance, but not until September 4, 1919. The policy was issued on that day, but was not mailed to the assured until September twelfth, reaching him on September thirteenth. It was, however, dated May 28, 1919, and by its terms insured the assured for a term expiring May 28, 1920.

The policy is headed " The Morris Plan," in large black letters. Underneath, in white letters, is the word " Insurance." Underneath that is the word " Society," in black letters. Directly under the word " Morris " is the trade-mark of Company, a black rhomboid with the words " The Morris Plan " in the centre. Underneath that, in small but distinct black type, are the words " Home Office, 52 William Street, New York City."

The loan and policy were both applied for at one of the New York city offices of Company, at 261 Broadway. The assured never had any dealings with any representative of Society, other than Company, and was never at Society's office in William street.

The policy provides that weekly payments shall be made in advance; that conditions on the " following pages " are part of the contract; that payments are to be made until the full premium shall have been paid; that if the assured dies within one year from the date of the policy, while it is in force, the amount

Appellate Term, First Department, June, 1921.   [Vol. 115.

of the policy will, upon proof of death, be paid (1) to Company to liquidate any debt of the assured to Company, (2) the balance to the second beneficiary (in this case the plaintiff). The "conditions on the following pages" are that the policy cannot be changed except in writing, signed by certain officers of Society; that "no agent shall have power to waive forfeiture, or receive premiums on policies more than four weeks in arrears, or to receipt for same in the premium receipt book belonging with this policy, and all such arrears paid to an agent or other representative shall be at the risk of those who pay them, and shall not be credited upon the policy whether entered in the premium receipt book or not;" that the "policy shall lapse if any premium be more than four weeks overdue, but may be reinstated upon payment of all arrears and the presentation of evidence satisfactory to Society of the sound health of the insured."

The total premium on this policy, twelve dollars and fifty cents, was paid to and accepted by Company in three instalments, as follows: five dollars on May 28, 1919; two dollars and fifty cents on January 2, 1920; five dollars on February 2, 1920; each payment (other than the first) being made simultaneously with payment to Company of a loan instalment due on the same day. Company on none of these occasions demanded any evidence that the assured was in good health. In fact, the assured was in good health on January 2, 1920, but on February 2, 1920, he was ill. There can be no charge of bad faith against the plaintiff, the assured's wife, who paid the premium on the last-mentioned day. She waited until the day upon which the loan instalment was due, although her husband had been ill for ten days, and then paid the premium with the loan instalment. It is quite evident that neither the assured nor his wife had any reason

to believe that a claim would be made that the policy had lapsed prior to January 2, 1920. Neither on that date, nor on February 2, 1920, was any question raised as to the validity of the policy. Upon making final payment, plaintiff was assured by Company that the premium was then paid in full, and was instructed by Company's cashier to keep the stamped book, as that was her receipt for the insurance. The assured died on February 3, 1920.

The plaintiff does not make the point that the policy did not lapse. I am of the opinion that a cogent argument might have been made in support of the proposition that no lapse occurred. The assured was charged premiums for a full year. In point of fact, the insurance written was for a period of only 259 days. The premium charged was fifty cents per week.

It should have been thirty-six cents per week. Society was prohibited from discriminating as among its policyholders. Ins. Law, § 89. By its excessive premium charges it did discriminate against assured, and its discrimination placed in the hands of Society, or at least in those of its agent Company, moneys that properly belonged to the assured, and which moneys had been paid in by the assured for the express purpose of paying premiums. On a non-discriminatory basis, there was at all times prior to the death of the assured a sufficient sum of money, properly belonging to the assured, to meet the assured's premium obligations. It is true that the statute does not provide for the application to payment of premium charges, moneys improperly exacted by discrimination, but it seems to me that it should not be beyond the power of courts to deem them so applied in order to prevent a forfeiture. For a statutory analogy, see Insurance Law, section 88, providing for such an application of moneys due to a policyholder as dividends. The plaintiff places

32

Appellate Term, First Department, June, 1921. [Vol. 115.

sole reliance, however, upon her contention that any lapse that occurred was waived. I come, then, to a consideration of that question. Concededly, there was such a waiver provided Company was authorized to accept over-due premiums and thereby reinstate the policy. I do not think there is any provision in the policy that can be given the effect of limiting the authority of Company. The policy does contain the statement, or warning, or notice, or whatever it may be called, that " no agent shall have power to waive forfeiture, or receive premiums on policies more than four weeks in arrears." But in the agreement between Society and Company there was, in fact, no limitation whatsoever of the authority of Company, thereby made Society's " exclusive agent." Furthermore, it is very plain that Society, in real fact and substance, is a mere department of Company. Not only had Society given to Company the power to transact all Society's business, and to keep all its records, but Society in practice had nothing to do with either policyholder or policy after issuance of a policy. Company was in such complete control of the insurance feature of the Morris Plan that Society had not even its own independent means of ascertaining the correctness of a date of lapse given by Company. The date given on Company's notice of the alleged lapse of the policy here in question is an obviously incorrect date, and yet it was blindly accepted by Society as the correct date. Society makes much of the fact that Company failed to account to it in respect of the premiums accepted by Company from the assured. It seems, however, that the provision in the agreement between Society and Company for fixed periodic accountings was, in practice, wholly disregarded. It is quite apparent that these interlocking companies in conducting their joint and interlocking business placed

in each other, as was quite natural in the circumstances, the most implicit trust, and that only in the most technical sense can Company be regarded as Society's agent. When, as here, an agent is in complete control of a business, a limitation upon its authority should be unequivocal. As I read this record, Society, in truth and fact, was nothing more nor less than an adjunct, or feeder, or instrumentality of Company.

I think it follows that Company possessed authority to waive the lapse, if lapse there was, and I advise that the judgment rendered by the learned trial justice be affirmed.

BIJUR and WHITAKER, JJ., concur.

Judgment affirmed, with twenty-five dollars costs.