142 So. 393

**GREER, Insurance Commissioner, v. ÆTNA LIFE INS. CO. OF HARTFORD, CONN.**

3 Div. 14.

Supreme Court of Alabama.

June 2, 1932.

Thos. E. Knight, Jr., Atty. Gen., and A. A. Carmichael, Asst. Atty. Gen., for appellant.

Hill, Hill, Whiting, Thomas & Rives, of Montgomery, amici curiæ.

Benners, Burr, McKamy & Forman, of Birmingham, for appellee.

GARDNER, J.

The Ætna Life Insurance Company (hereinafter designated the insurance company) is duly qualified to do business in this state, and is admittedly solvent and able to comply with contracts it may make. The insurance company has a mortgage loan department, and submitted to the superintendent of insurance for his official approval a form of insurance contract intended for the purpose of affording protection to borrowers from the loan department for the amount of their loans. The contract thus proposed consisted of a master policy to be issued to the loan department and of the certificate under this master policy to be issued to each borrower from said loan department who cared to thus protect his loan, and a form of note to be executed by the borrower in conformity with said proposal.

The superintendent of insurance entertained the view that the insurance feature of this proposed plan worked an unlawful discrimination among the policyholders, and was violative of sections 4604, 4589, and 8371, Code 1923. He therefore declined his approval, and threatened the insurance company with a revocation of its license to do business in this state if it attempted to effectuate the plan so proposed.

The insurance company, alleging irreparable injury, should its license be revoked, and insisting that the proposed plan violated no law of Alabama, filed this bill seeking injunctive relief against the revocation of its license. Upon submission of the cause for final decree on the pleadings and proof, relief prayed for was granted, and from such decree the superintendent of insurance has prosecuted this appeal.

It is expressly stated by appellant that no question is raised as to the remedy (Julian, Ins. Comm'r v. Guarantee Life Ins. Co., 159 Ala. 533, 49 So. 234, 236), nor as to whether the superintendent was, in disapproving the contract, "performing an administrative, official or judicial function," but the sole purpose of the litigation is the determination of the legality of the plan proposed.

The evidence upon which the cause was submitted was largely by way of explanation of this plan, and was not in conflict upon any material point, though there developed some differences of opinion among some of the witnesses, which, however, resolved themselves ultimately into questions of law for decision of the court.

The essential elements of the contract proposed and submitted for approval are confined to persons between the ages of twenty-one and fifty-nine, inclusive, and is broadly, but concisely, stated in brief as follows:

"The Aetna Life Insurance Company proposes to make mortgage loans in Alabama at the rate of 7 per cent., the loan to run for a fifteen year period, with principal and interest reductions payable monthly.

"The amount of monthly payments per $1,-000 on loan without insurance will be $8.99; the calculation being so made that the loan and interest will be fully paid at the end of the fifteen years period.

"The Aetna Company proposes to give the mortgage borrower the privilege of securing the payment of his mortgage loan, in the event of his death, by issuing to him a certificate of insurance referable to a master policy, for which the borrower, without reference to his age, will be charged the sum of $1.25 per month per thousand dollars of insurance; the calculation being so made that the insurance is reduced each month in the same amount that the loan is reduced, so that at the expiration of the fifteen year period, provided all monthly payments are made, the mortgagor's indebtedness and the insurance are both extinguished. Should the borrower die at any time before the end of the fifteen year period, his insurance being equal to the remaining amount due on the mortgage indebtedness pays such indebtedness in full."

It is insisted by appellant that the flat insurance rate of $1.25 per thousand per individual works a discrimination against those of younger ages and in favor of the older, that the life insurance business is based upon actuary tables showing life expectancy at various ages, and that any such contract which fails to give recognition to the greater cost of insurance for the older than the younger insurant violates sound and fundamental insurance principles.

But the evidence here without dispute shows that the flat rate, above indicated, is actuarily sound, and that from a financial standpoint the insurance company has nothing to fear, nor the superintendent of insurance in this respect anything of which to complain.

The sole question, therefore, is whether or not the flat rate for all those in the borrower's class works a discrimination condemned by our law. We are persuaded the correct answer is in the negative. The generally recognized rule is that "in the absence of statutory prohibition discriminations or rebating as to premiums is not illegal." 32 Corpus Juris, 1193.

Considering our statutes in the order first above noted, it appears that as to section 4604, Code 1923, it was the legislative

intent to prohibit discrimination by the life insurance companies between "insurants (the insured) of the same class and equal expectation of life." It contains no prohibition against discrimination as between individuals of different ages or different life expectancies. Under the proposed plan, all borrowers of the same age will pay the same premiums. It appears, therefore, that the contract offered contains nothing offensive to said section 4604.

■ The two remaining sections (sections 8371 and 4589, Code 1923) are those that were considered in Julian, Ins. Comm'r, v. Guarantee Life Ins. Co., supra, the latter section merely penalizing the nonobservance of the former, and have been brought forward since the above-noted decision into the Code of 1923, without material change.

True, as pointed out by counsel for appellant, the Julian Case, supra, has been adversely criticized (The Insurance Commissioners in the United States by Edwin W. Patterson), but with that particular criticism we are not here concerned, as the feature of the opinion here important relating to the correct meaning of the word "class" as used in said statute has met legislative approval by re-enactment thereof with such definition attached thereto. Discussing the statute, the court in the Julian Case, supra, said: "The key word to construction of this provision of the statute is the word 'class.' As therein employed it has no reference to the individual characteristics of the policy holder. It refers to that number of persons who hold similar policy contracts. * * * The phrase 'of the same class' qualifies the term 'policy holder,' and hence 'class' clearly means the holders of like policy contracts."

Appellant argues upon the theory that the word "class" in the statute has reference to the form of the policy, as, for instance, group insurance and one-year policies convertible into fifteen, and that, as the proposed plan is in group form, and in the form of a one-year policy convertible into fifteen, it must be compared to and on an equality in all respects with all other group insurance contracts with similar form policies. Illustrative of the contention thus advanced, a form of policy of group insurance for employees is offered in proof and comparison invited. It may be conceded that some points of differentiation do not appear sufficiently significant as to place the two in a separate class, as, for instance, a difference in the number of days of grace, notice of claim, and perhaps other provisions not of major importance. But there are fundamental differences that are readily recognized as constituting the two groups as separate and distinct. In the plan proposed, no one except a borrower from the insurance company between the ages of twenty-one and fifty-nine is eligible for this insurance, while in the other group only employees are insured.

As to the borrower's insurance, the beneficiary is not to some one designated by him, as with the employee, but to the mortgage loan department of the insurance company, which is obligated to apply the payment in satisfaction of the mortgage loan, and as to the borrower the amount of the death benefit decreases during the time the insurance is in force and is extinguished entirely at the expiration of the loan; while with the employee the amount either remains unchanged or increases, according to the policy provisions. There are other differences not necessary to note, and, indeed, the only point of similarity that is stressed upon our attention is that both contracts represent group insurance and a form of policy of one year convertible into fifteen years. But the fundamental distinction is that as to one the insured must be the owner of real estate upon which the insurance company is willing to extend a loan, and for protection of which such owner desires insurance on his life, as an incident thereto, while with the other the ownership of property is entirely immaterial, and his insurance is for the benefit of whomsoever he may designate.

In the Julian Case, supra, the court did not interpret the words "like policy contracts" as referable to a mere form of policy, but rather to the class of persons who under the terms of the contract were entitled to receive the insurance policy there considered. The class in the Julian Case embraced those who for a designated service received a special benefit, while under the plan here proposed the class includes those who are in a position to secure loans from the mortgage loan department, and wish to insure these loans. All in this class are treated without discrimination, and they constitute an entirely separate and distinct class from the employee or other group insurance.

We are persuaded, therefore, that the proposed plan likewise offends no provisions of sections 8371 and 4589, Code 1923.

Counsel for appellant argues the tendency of modern decisions to place insurance companies in the same category with public utilities and authorities are cited wherein discrimination in the transportation of like kind of traffic is prohibited. Appellant cites The Insurance Commissioners in the United States, supra (pp. 268, 269), as to administrative control over insurance rates and premiums, and authorities are noted as to regulation of public utilities. But no such regulation or control as therein discussed has been attempted in this jurisdiction, and these are matters, therefore, not here presented for consideration.

■ Appellant argues also that the insurance commissioner, under section 8347, Code

**124**

1923, is required to value all outstanding policies upon "the basis of the 'combined experience,' or 'actuaries' table, or the 'American experience table' rate of mortality," as a foundation for the liability of the company on account of its policy obligations, and that therefore any form of contract that does not fix insurance premiums in accordance with such tables and upon expectancies of life as therein stated violates the fundamental principle of life insurance, is unsound, and cannot be approved.

But such statutory provision and such actuary tables of mortality look to the financial soundness of the business and to a protection of the policyholder against insolvency of the companies. These considerations are here, however, of no controlling importance, for admittedly the flat rate provided for in the proposed plan will produce returns entirely sufficient as to meet the approval of sound insurance finance.

As previously herein noted, the entire solvency of the insurance company is admitted as well, also, the soundness of the proposed plan from a financial standpoint. Nor do we understand that it is contended the superintentent of insurance was in the exercise of a mere discretion in the matter of the threatened revocation of the license, but that the sole question presented is whether or not the proposed plan is violative of law. In section 8343, Code 1923, the matter of revocation seems to rest largely upon the matter of solvency, and nothing therein contained relates to the question of discrimination as between policyholders. Such right of revocation of license as to the matter of discrimination rests upon the other statutory provision herein discussed.

We have stated our view that the proposed plan does not violate any of these statutory provisions. We have examined with care the authorities cited by counsel for appellant (among them, 2 Cooley's Briefs on Ins. [2d Ed.] p. 1661 et seq.; Fogg v. Morris Plan Ins. Soc., 115 Misc. Rep. 491, 188 N. Y. S. 867; 3 Cyc. of Ins. by Couch, § 584 et seq.; Franchise Motor Freight Ass'n v. Seavey, 196 Cal. 77, 235 P. 1000), but we find nothing in them that militates against the conclusion here reached.

We are therefore persuaded the proposed plan is not offensive to our law, and that a revocation of complainant's license is not justified thereby.

It results that the decree is correct and will accordingly be here affirmed.

Affirmed.

ANDERSON, C. J., and BOULDIN and FOSTER, JJ., concur.