191 So. 903
**AMERICAN LIFE INS. CO. OF ALABAMA v. ALADDIN TEMPLE BEN. ASS'N, D. O. K. K.**

6 Div. 526.

Supreme Court of Alabama.
June 15, 1939.

Rehearing Denied Oct. 26, 1939.

Further Rehearing Denied Nov. 23, 1939.

J. L. Drennen, of Birmingham, for appellant.

514

Graham Perdue, of Birmingham, for appellee.

FOSTER, Justice.

This is a second appeal in this suit. See, 235 Ala. 431, 179 So. 243. It was tried on counts B, C and D there referred to. No question is here raised as to their sufficiency.

The questions now are whether they have been proven so as to justify a recovery, and whether demurrers to defendant's special pleas were properly sustained.

There are two aspects of the right to recover (not now considering the amount); one is under count B for money had and received, and the other is under counts C and D, for breach of a special contract.

The theory of count B is that if the special contract, called a binder, is void for the reason set up by defendant, plaintiff is due to recover on this count the amount paid by them to defendant; that defendant cannot retain the amount paid as a feature of the consideration of the contract and repudiate it as binding. This form of action lies to recover money paid under a contract which is void for certain reasons, as where there is a want of mutuality or where the statute of frauds is a good defense. 4 Amer.Jur. 517, 518, section 27, notes 15 and 16; Allen v. Booker, 2 Stew. 21, 19 Am.Dec. 33; West v. Holman, 223 Ala. 114 (cases cited on page 116), 134 So. 667; Flinn v. Barber, 59 Ala. 446; Id., 64 Ala. 193; 59 A.L.R. 258; 13 Corpus Juris 244; 7 Corpus Juris Secundum, Assumpsit, Action of, p. 114, § 9 (c).

The defendant claims that the contract as contended for by plaintiff was not made by an agent with due authority, and offered to restore the consideration of $500 when plaintiff demanded its performance. Plaintiff declined to receive the money, but defendant has not pleaded a tender nor brought the money into court, but offered to prove that it had this amount to its credit for that purpose in an Avondale bank, which failed, and resulted in a loss to defendant of that amount. This was immaterial to any issue in the case, and was properly excluded.

Plaintiff had the right to proceed on both theories, as set out in the complaint, though they were inconsistent, and to recover on that which may be supported by the evidence. Louisiana Oil Co. v. Green, 230 Ala. 470, 161 So. 479; Bankers' Mortgage Bond Co. v. Rosenthal, 226 Ala. 135, 145 So. 456 (6); Southern B. & L. Ass'n v. Bartee, 24 Ala.App. 555, 139 So. 293, certiorari denied, 224 Ala. 276, 139 So. 294.

So that according to the admission in the defendant's evidence, plaintiff was entitled to recover at least the $500, with interest, unless the special pleas set up good matter of defense. We will discuss them later.

With reference to the second aspect of plaintiff's claim, set out in counts C and D, plaintiff must prove a valid contract with defendant, and that it was breached. It will be noticed that the "binder" does not specify the amount of the premium to be paid by plaintiff to defendant for the group policy. But a premium charge of $500 was paid for the "binder" with the stipulation that "the premium specified in the contract less this binding premium is to be paid upon the delivery of the contract." Count C sets out in full the binder, and then alleges that as a part of said contract defendant's agent in the line and scope of his authority agreed that in case the age of plaintiff's members should average fifty-three years the semi-annual premium for each of said members would be $5.045: that their average was, to-wit, fifty-three years, and plaintiff offered to pay the premium on that basis.

It developed that it was this premium rate that caused defendant to repudiate the binder as a contract to issue a policy of insurance for that such rate was one

516

which would not support the proposed insurance.

We pretermit a consideration of whether such a stipulation, if verbal, would modify or add to the terms of the binder as written, in contravention of the rule.

■ Although policy contracts of insurance must be plainly expressed in writing as required by section 8371, Code, this does not apply to informal temporary contracts, such as binding slips or memoranda. Sun Ins. Co. v. Mitchell, 186 Ala. 420, 65 So. 143.

■ The term "binder" has a well known significance in the parlance of insurance contracts. For a full discussion, see Cherokee Life Ins. Co. v. Brannum, 203 Ala. 145 (7), 82 So. 175.

The evidence for defendant was that O'Bear had no connection with the company other than that of soliciting agent on a commission basis; and had no authority to fix premium rates; that this is a highly technical procedure done by experts called actuaries.

There was admitted in evidence a certified copy of the license issued to O'Bear by the Superintendent of Insurance of Alabama declaring that O'Bear is agent of defendant "authorized to take risks and transact the business of life insurance for said company during the year 1929, subject to revocation." There is no question of revocation here. It was observed with respect to such a certificate issued by authority of section 8353, Code, that it was admissible as prima facie proof of general agency. Sun Ins. Co. v. Mitchell, 186 Ala. 420, 65 So. 143. The certificate in that case was in the same form, using "fire" there for "life" here. It was also noted there that a "general agent's authority must be determined by the nature of the business, and is prima facie co-extensive with its requirements. See United Burial & Ins. Co. v. Collier, 24 Ala.App. 546, 139 So. 104; Act of February 10, 1927, page 34, as amended by Act of September 14, 1935, page 1115.

■ It is also said that an agent duly authorized to bind his company by contracts for insurance may make valid binder agreements, " 'and a general authority to solicit insurance, receive premiums, and issue and deliver policies is sufficient to cover an executory contract to insure.' " Sun Ins. Co. v. Mitchell, supra [186 Ala. 420, 65 So. 145]. When this Court in that case

stated that such certificate was prima facie evidence of general agency, with authority to make a binder, it was with reference to agencies of fire insurance companies who issue and execute policies of insurance. There is a distinction between a general agent of a fire insurance company, and a soliciting agent for a life insurance company. 32 Corpus Juris 1065, section 142.

■ We do not think the Court meant that such a certificate as to a life insurance agent was prima facie evidence that he had authority to issue life insurance policies, or to make binders, or collateral agreements in that connection. The language used in that opinion must be construed in the light of its connection.

But agents for life insurance companies to solicit applications, collect initial premiums and deliver policies are said by some authorities to be presumed to be authorized and expected to state the cost of the insurance, and when and what premium would be payable thereon; and that such statements may have binding effect on the insurer for some purposes. New York Life Ins. Co. v. Pike, 51 Colo. 238, 117 P. 899; Illinois Bankers' Life Ass'n v. Dodson, Tex.Civ.App., 189 S.W. 992; 32 Corpus Juris 1193, section 325.

■ But insurance agents are prohibited by statute from making rebates or discriminations in respect to insurance premiums, section 8371, Code, and to do so is made a crime. Section 4589, 4605, Code. Without such statute there is no principle of law which prohibits such course of business. Greer v. Aetna Life Ins. Co., 225 Ala. 121, 142 So. 393, 84 A.L.R. 520; Whetstone v. Branch Bank of Montgomery, 9 Ala. 875; Brooklyn Life Ins. Co. v. Bledsoe, 52 Ala. 538; Meridian Life Ins. Co v. Dean, 182 Ala. 127, 62 So. 90; Id., 184 Ala. 673, 62 So. 94.

Plaintiff proved by Mr. Burns, a disinterested expert actuary, that the rate given plaintiff by O'Bear, as plaintiff contends meant for each of the one hundred and eleven members of the plaintiff association a premium rate of $20.18 per thousand, annually, or $10.09 per $500 of insurance, or $5.045 semi-annually, whereas computed according to the mortality tables used by insurance companies, and in the manner in which they ascertain the proper amount of the premium rate, it would be $41.51 per $1,000 annually; $20.75 per $500 which would be $10.375 semi-

annually per $500. He also testified: That "is the standard method used by actuaries of insurance companies by which they determine what premium will be required in order to insure the security of existing policy-holders, individual lives. As a matter of fact, the security of all policy-holders in that company necessarily depends upon whether or not the premium charge for its policies is a substantial, fair and adequate price for all premiums. The premium is based on the cost of insurance. So the fixing of a lower premium results in the depreciation of the security of the existing policy-holders, and would necessarily result in the final dissolution of the company without making suitable provision for the existing policy-holders." The rates calculated by the actuaries are standard. Nothing is to the contrary.

From this we infer that a rate calculated on a different basis resulting in a material difference in the amount and less than as thus calculated would be in the nature of a discrimination, since no company would normally make such a contract. So that to issue a policy with such differential as to the premium rate would violate the statute.

Defendant has not pleaded the invalidity of the contract to issue such a policy on account of the premium discrimination. But the evidence shows that it declined to issue the policy on the basis of such premium.

Counts C and D are specific in their allegation that the agent of defendant in the line and scope of his authority agreed upon such premium rate; whereas the binder itself stipulates that the rate will be specified in the contract (this is the policy when issued, as we understand its meaning).

True, the evidence is that O'Bear had no authority to fix rates in such a contract. But we have shown that by some authority it is implied in an agent sent out to solicit such insurance. Moreover, there is evidence that Mr. Powell, the "executive vice-president" of defendant, notified plaintiff that O'Bear had been put at the head of the fraternal insurance department. We need not say that the evidence is not sufficient to justify a finding by the jury that O'Bear had authority to bind defendant in representing to applicants for such insurance what the amount of premium rate would be in respect to this contract so long as it would be lawful and not prohibited. But those circumstances would not justify a finding that he had authority to make a discrimination or grant a rebate in negotiating such a transaction. So that as an executory contract for such rate, it was made by an agent who could not to that extent bind the company, and plaintiff cannot recover for its breach as alleged in counts C and D.

So we repeat that plaintiff is entitled to recover $500.00 paid on the binder with interest properly computed since March 4, 1929, when the contract was repudiated, subject to consideration of defendant's pleas, which we have now reached for discussion.

Appellant insists that plea A, to which demurrer was sustained, is a good plea and not subject to the demurrer. It is a plea of set off based upon the malicious prosecution of the suit which was dealt with on former appeal, in which it was held that the former suit was not an election of remedies so as to preclude the present suit. We refer to plea 3 set out in the report of that case for a description of the suit now mentioned in plea A, alleged to have been maliciously prosecuted to the damage of appellant, and attempted to be set off.

The statute does not permit the set off of a demand which sounds in damages merely. Section 10172, Code. Such a debt or demand is one which, when the facts are known, is incapable of being measured accurately by a pecuniary standard. Section 10173, Code.

We have held that a plea of set off claiming damages for deceit is of that sort, though the amount claimed is a definite amount by way of compensation. Fidelity-Phenix Fire Ins. Co. v. Murphy, 226 Ala. 226, 146 So. 387; Drennen Motor Car Co. v. Smith, 230 Ala. 275, 160 So. 761.

A claimant cannot make his demand within or without the statute at his election by splitting off from it only such features as are measurable by a definite standard. This principle has been applied to claims of slander, malicious prosecution, false imprisonment, seduction, and assault and battery. Walker v. McCoy, 34 Ala. 659; Nelms v. Hill, 85 Ala. 583, 5 So. 344; Norton v. Bumpus, 221 Ala. 167, 127 So. 907.

Especially applicable to this plea of set off of damages for malicious prose-

cution is a case directly in point of Barnes v. Marshall, 193 Ala. 94, 69 So. 436.

For what appears to be a complete analysis of the Alabama cases on the subject, see 57 Corpus Juris 437, note 73.

There was no error in sustaining demurrer to plea A.

■ Appellant also assigns as error, and argues, the ruling sustaining the demurrer to plea B, which was not before the Court on former appeal. It sets up the fact that said former suit was begun with full knowledge that it was without right, and would entail expense in defending it, and that it did so result, and thereby it committed a legal fraud on defendant, and estopped plaintiff from maintaining this suit.

There is no such principle of which we are aware. Under such facts defendant's only recourse is an action for malicious prosecution Glidden Co. v. Laney, 234 Ala. 475, 175 So. 296; Peerson v. Ashcraft Cotton Mills, 201 Ala. 348, 78 So. 204, L.R.A.1918D, 540. The only principle of estoppel under such circumstances, as we now view the situation, is that of an election of remedies or actions treated on former appeal.

Appellant assigns as error rulings on pleas C, D, E and F, which were also said not to have been before the Court on former appeal. But in substance and effect they are the same as plea 3 on former appeal, relying upon the doctrine of estoppel by election. They are subject to the discussion there made, and need none now.

■ The only error which we find in the record relates to the amount of the damages which plaintiff was due to recover. There was a motion for a new trial because the damages were excessive. We think that plaintiff was due to recover only the sum of $500, with interest calculated at eight per cent. per annum from March 4, 1929, to February 9, 1935, and at the rate of six per cent. from February 9, 1935 to the present date. This calculation will be made by the Clerk of this Court, and the amount of it fixed in our judgment. By authority of section 6150, Code, it is ordered that appellee be notified of the amount of the recovery in excess of the just and proper amount, and required within thirty days to remit such amount; and if such remittitur is not thus filed in this Court, the judgment shall be reversed and the cause remanded for another trial. If the remittitur is so filed, the judgment shall be reduced accordingly, and affirmed for such reduced amount.

Affirmed conditionally.

ANDERSON, C. J., and BOULDIN and KNIGHT, JJ., concur.

On Rehearing.

FOSTER, Justice.

■ Appellant claims that we fell into error in holding that a recovery could be had of the amount paid under a void contract, because the alleged contract violated the statute against premium discrimination, invoking the well known principle that money cannot be recovered when paid under a void contract, if the contract is expressly prohibited by law or its execution is made a criminal offense.

The binder fixing the rate was made by an agent of appellent, which appellant claimed was without authority to bind it, and repudiated it as a contract.

We held that the circumstances did not justify a finding that the agent had authority to execute a binder on a rate which was discriminative, and in violation of the statute; that it was therefore made by an agent who could not bind the company as the contract purported; that therefore the company was within its right in repudiating it—not because it was illegal but because it was never made by it. The illegality of the rate made by the agent without due authority was but a circumstance bearing upon such authority. No contention has been made that the contract was executed by an authorized agent, and repudiated by the company because it created a discrimination in violation of the statute. The company received the money without participation in a known illegal transaction, and appellee is not shown to have been aware of any discrimination in violation of the statute.

■ The principle relied on serves to prevent a person who is a party to an act expressly prohibited by law, or which is made criminal, or is against public policy, from suing to recover any benefits of it. If he acts in good faith, the dereliction of the other party does not work against the enforcement of his claims. He must be in pari delicto. 32 Corpus Juris 1238, section 413; Wright v. Martin, 214 Ala. 334, 336, 107 So. 818; 13 Corpus Juris 498;

Mobile & Ohio R. R. Co. v. Dismukes, 94 Ala. 131, 10 So. 289, 17 L.R.A. 113; National Bank v. Petrie, 189 U.S. 423, 23 S.Ct. 512, 47 L.Ed. 879; 21 R.C.L. 176, section 209.

■ In this case both parties are free of guilt. The company repudiated the contract as soon as its nature was known to it. Appellee was not a party to any illegality, and not charged with knowledge of any discrimination. See, National Bank v. Petrie, supra; Morris Adler & Co., v. J. E. Jones & Co., 208 Ala. 481, 94 So. 816.

■ If appellee is entitled to a refund of the $500.00 paid on a contract which appellant repudiated because made without its authority, there is no reason why interest is not also payable. True, appellant offered to refund the amount at the time, but as a tender it has not been kept good.

We see no reason why we should elaborate the other matters discussed in the opinion, as they express our views with no new aspects now presented.

Application overruled.

ANDERSON, C. J., and BOULDIN and KNIGHT, JJ., concur.