

# THE ATTORNEY GENERAL
# OF TEXAS

### AUSTIN 11, TEXAS

PRICE DANIEL
ATTORNEY GENERAL

July 11, 1947

Hon. George B. Butler, Chairman
Board of Insurance Commissioners
Austin, Texas                    Opinion No. V-300

Re: Whether the Assured
Home Ownership Plan
of the Equitable
Life Assurance Soci-
ety of the United
States violates Ar-
ticle 5053, V.C.S.

Dear Sir:

In presenting the above question to this Depart-
ment, you have enclosed your complete record of the hear-
ing before your Board on the Equitable plan. You have
also enclosed able briefs submitted by Equitable and those
complaining of the plan. The Equitable plan is in essence
one to require, simultaneously with the making of a loan
on residential property, one of Equitable's own policies
of life insurance as security for the loan in the event
of the death of the borrower. It may be important to
note that in the course of negotiations the plan does
not contemplate the premise of a loan. The plan, in its
broadest aspect, involves a complete selling program,
with contracts and applications consistent with the plan;
and of course, the administration of the loan and insur-
ance policy subsequent to the closing of each loan. The
statute involved, Article 5053, Vernon's Civil Statutes,
reads as follows:

"No insurance company of any kind doing
business in this State shall make or permit
any distinction or discrimination in favor
of individuals between the insured of the
same class and of equal expectation of life
in the amount of, or payment of, premiums or
rates charged for policies of life or endow-
ment insurance, or in the dividends or other
benefits thereon; nor shall any such company
or agent thereof make any contract of insur-
ance or agreement as to such contract other

than as expressed in the policy issued thereon; nor shall any such company, or any officer, agent, solicitor, or representative thereof, pay, allow, or give, or offer to pay, allow or give, directly or indirectly, <u>as an inducement to insurance</u>, any rebate of premiums payable on the policy, or any special favor or advantage in the dividends or other benefits to accrue thereon, or any paid employment or contract for service of any kind or anything of value whatsoever, or any valuable consideration or inducement whatever not specified in the policy or contract of insurance; . . ." (Emphasis supplied)

The requirement of insurance, both property and life, as additional security for loans is generally recognized as a wholesomepractice if it is not abused. Lending organizations universally require some type of insurance on the property mortgaged. Property insurance agents are quite generally engaged in the loan business. In the very nature of things the agent desires the insurance business in conjunction with the loans he negotiates. Any borrower knows that the agent will take greater interest in the loan application when he expects to write the insurance. The probable advantage to the borrower in purchasing his insurance from the agent is present in any such negotiation by tacit understanding. We see no real distinction between such a transaction and the plan utilized by the Equitable. Equitable is free to select its borrowers and its insureds. It may refuse to make a loan unless secured to its satisfaction. It is not contended that it may not require life insurance as additional security for its loans. We see no reason why this concern legally engaged in both lines of business may not take advantage of their complementary features.

Article 5053 is primarily designed to prohibit discrimination between insureds of the same class. As stated in Couch on Insurance, Volume 3, Section 584, page 1872:

"The object or intent of statutes aimed against discrimination and rebates is that uniform rates shall be established and maintained, so as to secure all persons equality as to burdens imposed, as

well as to benefits derived, by preventing
discrimination by insurers in favor of in-
dividuals of the same class, either as to
premiums charged or dividends allowed, or
as has been stated, in order that prospec-
tive insurants of the same class shall not
be unfairly treated or discriminated a-
gainst, by inducements being given to one
of such class, which are not available to
all therein."

As is true of all anti-discrimination statutes,
the elements of reasonableness and fairness are to be read
into them. The law cannot and does not attempt to place
everyone on an identically equal basis in every situation.
Of this statute, the Court of Civil Appeals at Texarkana
said in the case of Morris v. Ft. Worth Life Insurance
Company, 200 S. W. 1114:

"It is one of the evident purposes of
the statute above quoted to prevent dis-
crimination and secret agreements by which
certain policyholders may be enabled to
secure special favors as a consideration
for their contracts of insurance."

The Equitable plan is essentially uniform in its
application to insureds of the same class. On its face,
the plan contains no element of a secret or side agreement
with the assured which could be considered as an inducement
or consideration for the sale of an insurance policy any
different from that offered to any other assured of the
same class. Simply because a prospective mortgagor is re-
quired to secure his loan by a policy of life insurance,
affords no basis for the contention that the borrower is
induced illegally to purchase insurance, or that the loan
forms a part of the consideration for the policy. To hold
otherwise would be reading into the statute a broader pro-
hibition than is contemplated. The inducement aimed at
is that which actually occurs, proved by competent evidence
which of necessity by the very nature of the term involves
the intent, purpose, methods and approach of the company,
officer or agent employed in each transaction. According
to Webster, the word "induce" is synonymous with "insti-
gate", "lure", "incite", "entice", "impel", "urge". We
cannot speculate that these elements will be present in
each transaction even before it occurs.

Questions raised in various states under es-
sentially identical statutes have been resolved by State

Courts, Attorneys General, and insurance officials against holding the plan and similar transactions to be prohibited as a matter of law. While the basis of these holdings, findings and opinions are not entirely uniform, the ultimate conclusions that such transactions are not per se illegal have been practically unanimous.

In the case of Greer vs. Aetna Life Insurance Company (Supreme Court of Alabama), 142 So. 393, the court held that an arrangement by Aetna to secure loans by its own policies of insurance did not violate the Alabama Statute, which is in essence the same as the Texas statute. However, in that case the main contention discussed by the court was that the policy issued on a 15 year term on a flat premium to all persons between the ages of 21 and 59, the same premium to be applicable to every age, constituted a discrimination between the policyholders and in that way violated the statutes.

In the case of Phillips vs. Fishback, (146 Pac. 181), the insurance agent agreed with the assured that a loan would be made and that a policy of insurance was required to secure the loan. It was contended there that the loan agreement was an illegal consideration or inducement for the policy of insurance. The Court said:

> "If the inducement and consideration flowing from appellant in such transactions constitute an inducement or favor for anything, it is for the granting of a loan."

We find this statement in Joyce on Insurance, Volume 2, page 2195, section 192g:

> "Nor is it violative of the statutes as to rebates, etc., to require one who desires a mortgage loan from the company to take out life insurance."

In considering this plan, the New York Department of Insurance had the following to say:

> "In view of all the circumstances, and after listening to the points raised by the members of the insured Savings Associations, I am convinced that the Equitable is making every reasonable effort to conduct its affairs ethically and with due consideration to the effects of replacing mortgage loans

with lower interest rates. I can see no justification for the charge of rebate and, so far as I can determine, the charge of 'raiding' other portfolios seems unjustified. However, it does appear to be a fact that the Equitable has an advantage in obtaining this type of loan by reason of its trained personnel and the selected areas in which they appear to be operating."

Likewise, the Superintendent of Insurance in Ohio is quoted as follows:

"An applicant for a loan must at the same time apply for a policy of life insurance in same amount; the policy is then assigned as collateral to the loan. . .

"In my opinion, to say, an insurance company in requiring an applicant for a loan to take out a policy of life insurance, is violating General Code 9404 in that in so doing it is 'giving something of value,' is erroneous. To require a life insurance policy to be taken with each loan and to have said policy assigned as collateral security for said loan is within the rights of the company. . .

"The complaint as a whole attacks the general plan, and we find that the evidence introduced is insufficient to sustain the complaint. The complaint is therefore dismissed."

The Attorney General of Ohio is quoted in a ruling in 1941 as follows:

"At no time does it appear from the papers which you have submitted to me that the insurance company gives or offers to give, or enters into any separate agreement promising to secure the loan of any money as an inducement or consideration for insurance. It would therefore seem that the loan, if made, is not an inducement to insurance but rather that the insurance is an inducement to the loan.

"I realize, of course, that the plan
makes it possible for an agent to offer
to secure a loan as an inducement to a
prospective purchaser of insurance to ap-
ply for such insurance. This, however,
is not contemplated by the documents
which you have submitted to me and the
mere possibility of such misconduct on
the part of an agent does not suffice
to make the plan illegal. In such event
the statutes give to you ample author-
ity to punish such an agent. In view
of the rules of construction applicable
to the statutes in question and since
the documents which you have submitted
to me do not contain any promise on the
part of the insurance company to make a
loan of money to the applicant, I con-
clude that the plan as evidenced by
these documents does not constitute an
inducement to insure within the mean-
ing of the sections above referred to.

From his Biennial Report of 1930, the Attorney
General of Alabama is quoted as follows:

"It seems to me that there is a ques-
tion of fact to be determined in each case.
When the loan is the principal transaction,
and the life insurance is a bona fide in-
cidental requirement of the company, for
the purpose of augmenting the loan secur-
ity, a requirement made of all applicants
alike, without discrimination, who may ap-
ply for a loan, then I am of the opinion
that the transactions do not fall within
the inhibitions of the statute.

"However, if the company or agent
call upon a prospect for life insurance,
and as a sales argument or inducement,
makes the promise that if the policy of
insurance is taken, the company will make
long time mortgage loans to the insured,
at a low rate of interest, and without
charging any commission, then, I am of
the opinion that this will constitute an
'inducement,' in fact and in law, and
would be offensive to statutes, supra.

unless it is specified in the contract
of insurance, and unless it applies to
all persons alike who apply for insur-
ance without discrimination. <u>I, there-</u>
<u>fore, hold that the method of making</u>
<u>loans in connection with the issuance</u>
<u>of insurance policies, as outlined in the</u>
<u>statement of facts, is not offensive to</u>
<u>the Alabama Statutes and does not have</u>
<u>to be set out in the policy of insurance.</u>"

The two Texas cases construing this statute in
connection with the offer of a loan in connection with
the writing of an insurance policy, Morris v. Ft. Worth
Life Insurance Company, supra, and Gause v. Security Life
Insurance Company of America (Civil Appeals), 207 S. W.
346, are clearly distinguishable in that each involved an
isolated instance of an agent offering to make or promis-
ing a loan clearly and manifestly for the purpose of in-
ducing the particular prospect to take a policy of insur-
ance. The object was primarily to sell an insurance pol-
icy and the loan was offered in the fullest sense as "an
inducement to insurance." The Equitable in putting for-
ward this plan purports to be motivated by a desire for
protected loans. If that purported purpose is prosecuted
by its agents in good faith and is not misrepresented to
the borrower in such a way as to procure insurance on the
promise of a loan which does not materialize, it is not
subject to criticism. It is a legitimate prosecution of
the company's authorized business. It is not the plan
nor the ultimate result in the writing of a policy which
the statute condemns. It is the approach which must be
scrutinized. Every negotiation must be judged upon the
occurrences transpiring while it is being conducted.

We believe that this plan can be legally pre-
sented to prospective borrowers. Whether it is used
in a manner contrary to the spirit of Article 5053 is a
question to be determined on the facts of each transact-
ion.

## SUMMARY

The Assured Home Ownership Plan of the
Equitable Life Assurance Society of the
United States does not violate Article 5053

of Vernon's Civil Statutes as a matter of law.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By *[signature]*

Ned McDaniel
Assistant

By *[signature]*

Charles E. Crenshaw
Assistant

APPROVED

*[signature]*

ATTORNEY GENERAL

CEC:jmc:jrb