# Robinson *v.* Aetna Insurance Co.

128   477
s135   658
128   477
142   660

*Action on policy of Fire Insurance.*

1. *Insurance companies; powers of agents; general and special; extent of authority.*—An insurance company has the right to employ agents with limited authority, it may have a general agent with authority to transact all business in a particular way or a special agent whose authority is limited to a specific transaction, and as a general rule it may be affirmed that the authority of agents as to those dealing with them, must be determined by the nature of the business and is *prima facie* coextensive with its requirements, while secret instructions not known to those dealing with an agent acting within the apparent scope of his authority are not binding.

2. *Same; conditions in policies; how construed.*—Conditions in a

[Robinson v. Aetna Insurance Co]

policy of insurance prescribing duties upon the assured should be liberally construed in favor of the assured, and strictly against the insurer.

3. *Same; notice to agent; case at bar.*—Where a foreign insurance company appoints agents in this State to solicit insurance, collect premiums, make the survey, make the rates, remit premiums collected, deliver policies signed by the president and countersigned by such agents who have a license from the insurance department of this State, authorizing "them to transact the business of the said company in the State of Alabama for and during the year 1898," but who have no power to adjust losses or to take any steps looking to an adjustment,—it is held that such authority does not as a matter of law invest such agents with general authority to receive notice of the failure of the insured after loss to comply with the condition in the policy requiring an inventory of the property insured to be taken and kept in a fire-proof safe.

4. *Same; same; same; question for jury.*—Where such authority is given and it is shown that the insured gave such agents notice of the loss under the policy, and also notice of the destruction of his inventory by fire, and they in turn notified the company of the loss under the policy, and afterwards notified the insured that an adjuster had arrived, and to bring all of his books, which the insured did, and delivered the same to the adjuster, who called for them, and answer to an inquiry from the adjuster, told him that his bills and inventories had been lost, and that the books were all that he had saved, whereupon the adjuster proceeded to examine the same after having obtained from the insured a non-waiver agreement, it was held that it was a question of fact for the jury to determine whether notice to such agents of the loss of the inventory was notice to the company.

5. *Same; same; same; same; iron safe clause.*—Where the facts in regard to the authority of insurance agents to receive notice of the breach of some condition in the policy and to waive the same are in dispute or different inferences may be fairly drawn from such facts, an agreement signed by the insured subsequent to notice to such agents of said breach, that no condition in the policy would be waived by an adjuster taking steps to ascertain the amount of the loss, does not take from the jury the determination of the question of breach and waiver thereof, since it is for them to determine whether the breach was waived before or after the "non-waiver" agreement.

APPEAL from the Montgomery City Court.
Tried before the Hon. A. D. SAYRE.

This was an action upon a policy of fire insurance which covered a stock of goods and store fixtures. The policy contained a clause requiring the insured to take a complete inventory of the stock on hand at least once in each calendar year, otherwise rendering the policy void, it also provided that a set of books should be kept and that such books and inventory should be kept in a fire-proof safe or in some place not exposed to a fire that would destroy the building in which the insured property was located. Before proceeding with an investigation of the loss, the adjuster of the company procured from the insured an agreement to the effect that any action taken by such adjuster in investigating the cause of the loss, and ascertaining its amount, should not waive or invalidate any of the conditions of the policy. The facts relied on by the plaintiff for a waiver occurred before the execution of said non-waiver agreement. The other facts sufficiently appear in the opinion.

There were verdict and judgment for plaintiff. Subsequently upon motion of the defendant the court set aside said judgment and granted a new trial. From the judgment granting a new trial plaintiff appeals, and assigns the same as error.

GUNTER & GUNTER, for appellant.

THOS. G. JONES & GORDON MACDONALD, contra.

HARALSON, J.—Counsel for plaintiff who is appellant here state in their written brief on file, that "the only question on this appeal is, whether the court committed error in holding, that notice to the agents, Warren & Stewart, of the loss of the inventories, was notice of loss to the defendant. If it is error, of course, the court was correct in awarding the new trial. On the other hand, if it is incorrect, the court should not have granted the new trial."

If Warren & Stewart were the general agents of the company, with power to transact any and all busi-

ness, it is not denied that the condition of the policy in respect to the keeping of the inventories might have been waived by them. But, if they were merely local agents, with no power to adjust losses, or to do more than solicit business, makes surveys of property to be insured, make rates, collect premiums and remit to the company,—in the exercise of which powers their agency was general,—they would have no right to adjust a loss, or waive any of the warranty conditions of the policy, or to receive notice upon which a waiver by the defendant might be based. In other words, insurance companies have the right to have agents with as limited authority as they choose to confer on them. This question has been repeatedly settled by the adjudications of this court, sustained by authorities elsewhere.—*Ala. S. Mut. Assur. Co. v. Long Clothing & Shoe Co.*, 123 Ala. 967; *Waldman v. Ins. Co.*, 91 Ala. 170, 174; *Phoenix Ins. Co. v. Copeland*, 90 Ala. 386, 391; *Queen Ins. Co. v. Young*, 86 Ala. 424, 431.

It may be said in this connection, that a general agent is one who is empowered to transact all of the business of his principal, of a particular kind in a particular way; and a special agent is one authorized to act only in a specific transaction.—Mechem on Agency, §.6; *Wood v. McCain*, 7 Ala. 800.

It is contended, and properly, that the authority of an agent as to those dealing with him, must be determined by the nature of his business, and is *prima facie* coextensive with its requirements; and that persons dealing with insurance agents acting within the apparent scope of their authority, are not bound by secret instructions from their principals, which are not brought to the knowledge of such persons.—1 May on Ins., § 126; *Com. Fire Ins. Co. v. Morris*, 105 Ala. 499; *Ga. Home Ins. Co. v. Allen, ante* 451.

Again, the well settled principle is invoked, "that conditions and duties of the assured prescribed in a policy of insurance, should be liberally construed in favor of the assured, but strictly against the insurer." *Piedmont & A. L. I. Co. v. Young*, 58 Ala. 476; *Syndicate Ins. Co. v. Catchings*, 104 Ala. 188; *Tubb v. L.*

*L. & G. Ins. Co.*, 106 Ala. 651, 659; *Ga. Home Ins. Co. v. Allen*, 119 Ala. 448.

Upon such grounds, the plaintiff insists, that Warren & Stewart were the general agents of the defendant company in the particular business of soliciting insurance, making surveys of property to be insured, collecting premiums, to make insurances by policies signed by the president and countersigned by them as agents, which powers, taken in connection with the license of said Warren & Stewart issued to them by the insurance department of the State, authorizing "them to transact the business of said company in the State of Alabama for and during the year 1898," constituted them the general agents of said company, and that, the giving of notice to, and receiving the same by them of the loss of plaintiff's property and of the inventories of his stock, by fire, was the proper, natural and legitimate thing to be done, coming entirely within the scope of the business intrusted to them,—the plaintiff having no notice of any limitation of their authority, if any, in this respect. In connection with the foregoing proof, and as tending to show the nature of Warren & Stewart's agency, its extent and their authority as agents, the plaintiff proved that when the fire occurred, he notified these agents of it, telling them that he had lost everything, except his books, including inventories and bills; that Warren, one of the firm, told him that the adjuster would be down in a few days, and that he, the plaintiff, would be notified when he arrived; that Warren went to the house of the sister of plaintiff, where plaintiff stayed, during plaintiff's absence, and left word for him that the adjuster had arrived and to bring down what books he had saved; that the next morning he took the books in his buggy to the office of Warren & Stewart, when he met, and was introduced to the adjuster, Mr. Ellis, who asked him for his books, and he got them out of the buggy and carried them into Warren & Stewart's office, and told the adjuster, in answer to his inquiry, that he had lost his bills and inven-

31

tories, and that the books were all he had saved. It was also shown, in this connection, by Stewart, one of the agents,—to employ his language,—that "it was the regular course of business, to telegraph or write to the company of the loss, and if the special agent is here, we report to him. We mailed loss notice slips to the company. Mr. Robinson gave me the slip, and I sent that to the company." This witness testified that the powers of Warren & Stewart were, "to solicit business, collect premiums, make the survey, make the rates, collect the premiums and remit to the company. We had no power to adjust losses, or to take any steps looking to an adjustment." E. H. Warren corroborated Stewart as to their powers as agents, and stated that they had no other authority than that named in their commission.

Mr. May, in discussing the subject of general and special agents of insurance companies, in a manner not inconsistent with the authorities above cited, concludes thus: "But there seems to be no very well defined distinction between the powers of general agents, local agents and sub-agents, and, therefore, they may become, in any case a question of fact for the jury."—1 May on Ins., § 126.

In the case of the *Syndicate Insurance Co. v. Catchings*, 104 Ala. 176, we indulged elaborate discussion, on review of many authorities, of the question now before us, in which case the authority of the local agents receiving the notice of loss was one as to which, as here, the evidence was in conflict, and we held that his authority was a question for the determination of the jury. We will not repeat the argument there made, but refer to the case as fully sustaining the conclusion we here reach, that the authority of the agents, Warren & Stewart, to receive notice of the loss of the property and inventories for the company is one of fact for the determination of the jury.

The court charged the jury "That notice to Warren & Stewart of the loss of the inventory by the fire, if there was any such notice, was notice to the company." This charge, under our view of the case, was an im-

proper one, and the court acted well in correcting its mistake in giving said charge, by granting a new trial.

As to the "Iron Safe Clause," in the policy, there seems to be no dispute as to its breach by the plaintiff; but the evidence conflicts as to whether defendant waived the breach or not,—dependent, in some respect at least, upon the other question, whether the "non-waiver" agreement was signed after or before the alleged waiver of the said "Iron Safe Clause," as to which fact the evidence is again conflicting. There was no error, therefore, in refusing to give defendant's charge numbered 3. The questions sought to be raised by it, were proper for the determination of the jury under all the evidence. Its refusal, therefore, was no ground for granting the new trial, as ruled by the court below.

Affirmed.