8 So.2d 166

### AMERICAN LIFE INS. CO. OF ALABAMA v. CARLTON.

#### 6 Div. 868.

Supreme Court of Alabama.

Feb. 19, 1942.

Rehearing Denied May 14, 1942.

C. W. Greer and Frederick V. Wells, both of Birmingham, for appellee.

Hugh A. Locke and Andrew W. Griffin, both of Birmingham, for appellant.

BROWN, Justice.

This is the third appeal by the defendant. See American Life Ins. Co. of Alabama v. Carlton, 236 Ala. 609, 184 So. 171; second appeal, Id., 240 Ala. 173, 198 So. 1; where the nature of the controversy and some of

the pertinent facts and incidents thereto are stated.

On the last trial brought under review by this appeal the complaint was amended by adding "Count A-x" and withdrawing all other counts. The case went to trial and to the jury on said count resulting in a verdict and judgment for the plaintiff, hence this appeal.

Said count is in assumpsit for the breach of an alleged oral executory contract, on defendant's part, based on a valuable consideration, to wit "$24.11, as a premium, which said premium was then and there paid to the defendant," entered into between plaintiff's son, Rufus T. Carlton, and "defendant" *to issue a policy of life insurance* to said Carlton insuring his life for $1,000, with double indemnity, if death resulted solely from accidental causes, naming the plaintiff as the beneficiary therein. The breach alleged is that "defendant" breached said contract in that it "refused to issue and deliver to her said son the policy of insurance which it had, for the aforesaid consideration, *contracted to deliver.*" [Italics supplied.]

Said count by reference and adoption makes Carlton's application taken by C. A. Baker and Frank M. Jones as agents, a part of said count. The application states inter alia: "That the insurance hereby applied for shall not take effect unless a full first premium for the form of policy applied for in question 22 in accordance with the published rates of the Company is paid and the policy *delivered to me during my lifetime* and good health." [Italics supplied.]

■ It is a well-settled general rule of pleading that in actions ex contractu against a corporation, it is permissible to aver that the defendant entered into or made the contract, without declaring the agency. Paterson & Edey Lumber Co. v. Carolina-Portland Cement Co., 215 Ala. 621, 112 So. 245; 3 C.J.S., Agency, p. 245, § 312, and authorities cited in Note 53; 2 C.J. 904, § 610; 2 Am.Juris, 346, § 438.

■ This rule, however, can not be applied to save said Count A-x, from the attack made by the demurrer. It appears here that the negotiations for the insurance were initiated through the agency of Baker and Jones, and the nature of the protection applied for, and contemplated by Carlton was a contract of insurance evidenced by a policy, the issuance of which depended upon the approval of his application. There is nothing in the written application, when read into said count showing that any other contract than a policy issued and delivered to the applicant while in life and good health, was within the contemplation of the parties.

We are of opinion therefore that said count falls short of showing a binding obligation, and was subject to the defects pointed out by the fourth and eighth "additional grounds" of the demurrer found on page 90 of the record, and that the court committed reversible error in overruling said additional grounds. Crumpton v. Campbell, 228 Ala. 79, 152 So. 220.

Much is said by counsel for both parties, in argument and in brief on the demurrer about "J. D. Carroll," and his authority or apparent authority. There is nothing in the complaint showing that Carroll had anything to do with the application. The only agents of the defendant acting in respect to this application, so far as appears from the count, were Baker and Jones.

The circumstances relied on by the plaintiff as justifying an inference that the negotiations resulted in a contract to issue a policy between Carlton and defendant, were that Carlton, his brother-in-law, Scarborough, his cousin, Murff, and his brother-in-law, J. D. Carroll, went into the home offices of the defendant where soliciting agents kept their desks, and Carroll left the others saying that he would go and see what had been done in respect to Carlton's application, and went into some of the other rooms and when he came back into the outside office he stated that the application had been approved, which the undisputed evidence shows was not true. Carroll then went into an adjoining room, procured an official receipt for premiums, accepted from Carlton $24.11, countersigned said receipt and delivered this to Carroll. And the further fact that Carroll was at that time an agent of the defendant employed in the industrial department situated on the ground floor on 17th Street, that he had authority to collect weekly premiums on industrial policies, and had authority to solicit applications for life insurance, accept the first premium with the application and give the receipt therefor which was attached at the bottom of the blank applications furnished to agents. Prior to July, 1934, Carroll had worked in the other office on the second floor where agents who

worked on commission kept their desks, and worked on commission as a soliciting agent or broker, and was familiar with the custom and practices of the defendant's business, and where the supplies were kept.

The evidence shows that the plaintiff, who had nothing to do with the matter except to accept the receipt from her son, was the mother of Carlton, the mother-in-law of Scarborough and Carroll and the aunt of Murff; that at the time of the transaction, they all lived in the same apartment house operated by plaintiff, Scarborough and Carroll living in separate apartments, while Carlton and Murff were visiting and staying in plaintiff's apartment.

The plaintiff offered evidence showing that Carroll in 1933, while he was working with the brokerage department, took applications for insurance on defendant's forms, from the plaintiff, his mother-in-law, Scarborough, his brother-in-law, his sister-in-law, Mrs. Scarborough and their son, that all of said applications were accepted, the policies issued and after issuance of the policies Carroll accepted the first premium and gave receipt therefor. These facts are shown by the receipts and policies offered by plaintiff as going to show apparent authority of Carroll as an agent of the defendant. We note here that the witness Scarborough testified that he paid the first premium on his policy before it was issued.

The evidence is without dispute that soliciting agents, who procured and took the application on the regular form, had authority to accept the payment of the first premium with the application and give the binding receipt attached to the application blank, or after the issuance of the policy and when it was delivered. That such agents had no authority to accept payment of the first premium in the interim between the application and the issuance and delivery of the policy.

There is no evidence showing or tending to show that a soliciting agent who did not procure and present an application, had any authority to accept payment of the first premium in respect to applications procured and presented by another agent. And the evidence shows without conflict, or room for adverse inference, that the officer of the defendant corporation empowered to accept, approve or disapprove applications, dealt with and through the agent who procured the application, signed the same and presented it for consideration.

There was no positive evidence that at the time Carlton, Scarborough, Murff and Carroll went to the offices on the second floor of the Phoenix building any one of the officers of the company having authority to approve or disapprove applications and issue policies was in the building or that Carroll contacted any one of them, and was informed that the application of Carlton had been approved. The positive evidence offered by the defendant, on the other hand, is directly to the contrary and shows that the application was then under investigation and was awaiting a report from the U. S. Navy Department relating to Carlton's state of health while in the Navy.

■ The provisions of § 8353, Code of 1923, now § 66, Code of 1940, Tit. 28, pertinent to domestic insurance companies, are that "Every insurance company licensed to do business in this state under the provisions of this chapter, shall obtain from the superintendent of insurance a certificate of authority for every individual agent writing *or soliciting* insurance for it in this state, and such certificate shall be renewable in January of each year," [Italics supplied.] do not undertake to prescribe the scope and extent of the authority of such agent, but leaves this to be determined by the contract of agency, and the company's course of dealing in making contracts. The certificate issued under this clause of the statute is only evidence of the existence of the agency in some form. American Life Ins. Co. of Alabama v. Aladdin Temple Ben. Ass'n D. O. K. K., 238 Ala. 512, 191 So. 903; Liberty National Life Ins. Co. v. Staggs, ante, p. 363, 6 So.2d 432.

As to agencies of foreign fire insurance companies the statute in effect makes the certificate prima facie evidence of the authority of such agents to write policies of insurance. Code of 1923, § 8353, Code of 1940, § 66, Tit. 28; Sun Ins. Office of London v. Mitchell, 186 Ala. 420, 65 So. 143.

The evidence in this case shows that the defendant's general course of dealing was that its soliciting agents were authorized to solicit business, take applications on regular forms furnished by the company, and with the application receive and receipt for the first premium, and countersign and give to the receipt attached to the blank application. If the payment of the first premium was not made with the application, collection

666

was not authorized to be made by the soliciting agent until the policy was issued and delivered to the agent who took, witnessed and presented the application, to be delivered to the insured. When the agent received the policy for delivery he had authority to collect the first premium countersigned and deliver the official first receipt. There is no evidence showing or tending to show that in its general course of dealing, the defendant made executory contracts to insure or to issue policies of insurance.

As noted in the body of this opinion the witness Scarborough testified that he paid the first premium on his policy to Carroll, the agent who took his application, after the application was issued, and before the policy was delivered to him, but his policy and the receipt show that the policy was issued on November 21, 1933, and the premium receipted for on November 29, 1933.

Carroll, as the evidence shows, was a drunkard, and for all that appears in the evidence he withheld Scarborough's policy and made use of the money for the five or six weeks the policy was not delivered to Scarborough.

In no instance does the evidence show that one soliciting agent took and presented an application and another collected the premium before the issuance of the policy.

■ Under the evidence, when considered as a whole, in the light of the burden of proof resting upon the plaintiff, the only basis for a verdict in her favor rests upon speculation pure and simple and is wholly insufficient to sustain such verdict. The defendant was entitled to the affirmative charge. St. Louis & F. R. Co. v. Dorman, 205 Ala. 609, 89 So. 70; Doe ex dem. Rowe v. Goetchius, 180 Ala. 381, 61 So. 330; Bradford et al. v. Sneed et al. 174 Ala. 113, 56 So. 532; Smith v. Eudy et al., 216 Ala. 113, 112 So. 640.

Inasmuch as the pleadings must be recast if another trial is to be had, we refrain from discussing the other questions presented and argued. They may not arise in another trial.

For the errors noted the judgment will be reversed.

Reversed and remanded.

THOMAS, BOULDIN, and FOSTER, JJ., concur.