**CONTINENTAL CASUALTY COMPANY, Appellant,**

v.

**Mrs. Gladys Leith HOLMES et al., Appellees.**

**No. 17409.**

United States Court of Appeals Fifth Circuit.

April 16, 1959.

Rehearing Denied May 28, 1959.

Francis H. Hare, Birmingham, Ala., C. A. Poellnitz, Robert O. Cox, Florence, Ala., Hare, Wynn & Newell, Birmingham, Ala., Mitchell & Poellnitz, Florence, Ala., of counsel, for appellees.

Before RIVES, JONES, and WISDOM, Circuit Judges.

RIVES, Circuit Judge.

Appellee, Mrs. Gladys Leith Holmes, as beneficiary, sued the appellant, Continental Casualty Company, for the proceeds of a purported accident and health insurance policy insuring her deceased husband, Oliver Wendell Holmes, while flying as a pilot. She claimed that coverage was in force as a result of an oral binder or oral contract of insurance effected by the Company's agent, W. T. Musgrove, on January 3, 1957, and again on February 20, 1957. Her suit was primarily based on the proposition that W. T. Musgrove, a partner with W. R. Cadenhead in the firm of Musgrove Insurance Agency, had authority to orally bind the Company. Continental Casualty Company impleaded as third-party defendants the Musgrove Insurance Agency and the two partners individually (appellees here), alleging that none of the third-party defendants had actual authority to make the oral agreement and averred that, if Continental Casualty Company was liable to the plaintiff in this action (such liability being denied) on account of any apparent or ostensible authority, then the third-party defendants are in turn liable in the same amount to Continental Casualty Company.

The trial court submitted the questions to the jury with instructions that if they found the agents to have had either acual or apparent authority to orally bind the Company, the plaintiff would recover, and if they found the authority to be apparent only, then they should also find in favor of the Company in the same amount as against the agents.

The verdicts of the jury were in favor of the plaintiff, assessing her damages at $52,750 and in favor of the third-party

William L. Clark, James E. Simpson, Birmingham, Ala., Lange, Simpson, Robinson & Somerville, Birmingham, Ala., of counsel, for appellant.

defendants. Necessarily, therefore, the jury found that the agents had actual authority to make the alleged oral binder or contract.

Appellant-defendant contends vigorously that there was no substantial evidence justifying submission to the jury on the question of the agents' authority.

The deceased insured, Oliver Wendell Holmes, had prior to 1956 taken out several policies of various kinds of insurance, always using the Musgrove Insurance Agency of Florence, Alabama, to place his insurance. On February 3, 1956, Holmes executed an application for aviation accident insurance for coverage in the sum of $50,000, as a passenger in a certain aircraft, on a form provided by Queen Insurance Company, for which W. T. Musgrove was agent. Musgrove forwarded this application together with a similar application of James Luther Culver to the Atlanta, Georgia, office of Queen Insurance Company, and this Company, already having considerable exposure under a policy covering the same aircraft, undertook to place this insurance with a friendly competitor, Continental Casualty Company. Mr. Herbert V. Holland, Jr., the representative of the Aviation-Travel Accident Division of the Atlanta branch office of Continental Casualty, was given the information of the two applicants by Queen, and Holland wrote a letter to Musgrove on February 23, 1956, confirming the rates and amount of coverage, enclosing application to be completed and stated that Holmes and Culver both had coverage effective February 17, 1956. This letter appears in the margin.[1] The application was executed by Holmes on February 27, 1956, and forwarded with a letter from Musgrove to Holland on February 29, 1956. The policies were issued and returned to Musgrove.

Upon discovery that these policies did not contain a countersignature by a licensed resident agent of Alabama, Holland telephoned W. R. Cadenhead, Musgrove's partner, on March 9, requesting that the policies be returned to Atlanta for proper countersignature. There was delay in complying with this request, and on April 11, Holland wrote to Musgrove again requesting a return of the policies for proper countersignature. Upon further delay, Holland wrote Cadenhead on April 30 suggesting that Musgrove be licensed as an agent in Alabama which would allow Musgrove's countersignature to stand. Cadenhead answered on May 3 and gave Holland the necessary information to have Musgrove licensed. Thereafter, on May 7, Holland wrote Cadenhead a general business letter discussing the licensing of Musgrove and the countersignature of the two policies in question. In this letter he attempted to solicit business from the Musgrove Insurance Agency. This letter appears in the margin.[2] Holland then had the

---

[1]         "Oliver Wendell Holmes & James Luther Culver

"Dear Mr. Musgrove:

"We are holding on binder Aviation Accident coverage for the above named gentlemen. This provides $50,000.00 Bodily Injury Death and Dismemberment insurance while riding as a passenger in scheduled, non-scheduled, and private aircraft which have Civil Aeronautics Board certification or the foreign equivalent. Each man has $50,000.00, effective February 17, 1956.

"I am writing to ask you to confirm the above and the annual rate per thousand dollars of $1.35. For ease in writing the policies, perhaps you can have the enclosed applications completed and return them to me with your reply. I know that you discussed with Jerry Smith of Royal the possibility of even broader aircraft. If this is desired, I will need to know to what use in what aircraft the men would put the insurance.

"In the meantime, they do have the coverage. Please let me hear from you as soon as possible."

        "James Luther Culver
        "AA-108706

[2]         "Oliver Wendell Holmes
        "AA-108707

"Dear Mr. Cadenhead:

"Thank you very much for your letter giving me the information we needed to apply for a Continental license for Mr. W. T. Musgrove. Mr. Musgrove's license has been ordered via our License Department in the Chicago Home Office, and it is my understanding that he should have it in his hands within two weeks.

license request cleared through Continental Casualty's Agents' License Department in Chicago.[3] Musgrove was licensed by the Insurance Department of the State of Alabama on May 24 and this agent's license was forwarded to Musgrove on May 28, 1956.

Musgrove testified that he had a telephone conversation with Holland in February or March of 1956, during which Holland asked permission to apply for a resident agent's license for Musgrove and Musgrove gave the permission. Musgrove stated that they discussed the type of agency and the commission to be paid. Musgrove testified:

"Q. In that same conversation did Mr. Holland make any statement to you with respect to what kind of an agent he wanted you to be, and that Continental Casualty Company wanted you to be, Mr. Musgrove?

\* \* \* \* \* \*

"The Court: What were the exact words he told you?

"The Witness: To be a full agent for the aviation accident division, special risk, department of the Continental Casualty Insurance Company to secure business in Florence, Alabama and my territory for his company.

\* \* \* \* \* \*

"Q. Now during that same telephone conversation, did you and Mr.

Holland have a discussion about how much business potentially there was in the North Alabama area? A. Yes, sir.

"Q. Did you and Mr. Holland in this conversation discuss anything about what sort of limits that they wanted to write, or wanted you to sell for the Continental Casualty Company in regard to aviation accident policies? A. Nothing more than they were the largest writer, and the highest limit, wrote big limits, and wanted it.

"Q. Did Mr. Holland during that telephone conversation make any statement to you in regard to what sort of limits on a policy that you could sell for the Continental Casualty Company, Mr. Musgrove? A. No, sir.

"Q. Did Mr. Holland at that time give you any information or advice about to whom and with whom you would do business with the Continental Casualty Company? A. Through his department, Herbert V. Holland, of the Continental Casualty Company.

"Q. Did he at that time tell you that you would be subordinate to any other resident agent, or any other sort of agent for the Continental Casualty Company in the State of Alabama. A. No, sir.

"I am enclosing the two new policies for the above, which you sent to me. Will you please hold these in your office until Mr. Musgrove's license is received? After that, it will be alright (sic) to deliver them to the insureds.

"You have been very kind and patient with us in this matter, and I sincerely appreciate your cooperation. Please be assured that we intend in all ways to honor your Continental licensing, and we want to do as much business with you as possible and help you in all ways. As you doubtless know, the Continental Casualty Company issues more policies for more different types of risks than any other company, and in the Accident and Health business of stock companies, the Continental Casualty Company is larger than the rest combined.

"This means that we have the equipment, and we certainly hope we have the service to give you what you need. We have many attractive individual and group plans for all kinds of Sickness and Accident insurance. My personal division, Aviation, encompasses all kinds of specialties and travel risks, and I am always on call to assist.

"You will be hearing from me from time in fairly routine ways when I add your name to our special mailing list, and I hope that I shall be hearing from you regularly, too.

"Sincerely yours,
/s/ Herb Holland
"Herbert V. Holland, Jr.
Aviation—Travel Accident
Division."

3. For this license request, see footnote 14, infra.

"Q. Did you, Mr. Musgrove, have any conversation on that same occasion with Mr. Holland about how you would be paid for the business that you sold for the Continental Casualty Company or not? A. Yes.

"Q. Will you tell us what that was? A. Full agency commission and to be handled like all my other business, in my business."

After Musgrove received his resident agent's license from Holland on May 28, 1956, these parties had no further contact whatsoever until February 4, 1957.

On December 10, 1956, Musgrove wrote Holmes a letter concerning Holmes' policies in force at that time. Concerning the policy with Continental, this letter stated:

"Aviation Accident Policy which should be rewritten since you are flying a plane by yourself; this is written on a passenger basis, and not as pilot, but you should have this changed to cover you as pilot of the plane, and I would appreciate your considering this and agreeing to change it. It will cost you more money but will give you the protection that is needed. This policy was charged to Pressure Concrete Company of Florence, and I think in all fairness, and I am sure you agree, that we should transfer this over to your account. Will appreciate very much your discussing this with me the next time we get together."

Musgrove then had a conversation with Holmes on January 3, 1957, and in that conversation Holmes stated he wanted aviation accident insurance on a pilot's coverage basis, and Musgrove told him that he was covered from then on. Musgrove made a notation reading "Wendell Holmes Aviation Piolit (sic) * * *." and testified that he "went back to the office with it, and turned it over to my partner, Billy Cadenhead, for processing and getting the policy endorsed or a new policy issued, whichever was necessary to be done." Musgrove told Cadenhead that Holmes was at that time insured by oral binder. The next day,

January 4, Cadenhead wrote Continental Casualty Company stating:

"Continental Casualty Company
        "Re: AA 108707
    "Oliver Wendall (sic) Holmes
"Gentlemen:
"It is Mr. Holmes wishes to also have pilots coverage under this policy so will you please send us the necessary applications to have completed, or advise us what information you need. I am not sure what kind of plane he is flying but will secure this for you if necessary."

Thereupon Holland answered Cadenhead on January 7 with the following letter:

        "Oliver Wendell Holmes
            "AA–108707
"Dear Mr. Cadenhead:
"We will be delighted to entertain Mr. Holme's (sic) application for Pilot Coverage. I am enclosing another application which we would like to have him complete and also a Pilot History Form which also must be submitted.

"Depending upon Mr. Holmes experience and needs of the insurance, it is possible that our underwriters would not like to write as much as $50,000. principal sum for piloting. Completion of these two forms will help to determine this. If he should need only $25,000. while piloting, or that is all that could be written, we would be able to reduce the principal sum under the present policy to $25,-000. All the present coverage is included in the Pilot Policy, so that he would have $50,000. just as he now has with $25,000. piloting. Of course, this is all problematical.

"Please let me know if I may be of further help."

Some six weeks later, on the night of February 20, 1957, Holmes brought the application and pilot's history form to Musgrove's office. The application had been partially filled out by Cadenhead. In the application was the question, "Do you understand and agree that no insur-

ance will be effective until the policy is issued," and Cadenhead had inserted "yes." Concerning this answer, Musgrove testified as to the conversation between him and Holmes:

"The Witness: * * * I mean he went over these, read, he said 'Look there, right there,' and I told him—and then is when he questioned me, he said 'Haven't I been covered since you bound me back there?'

"And I said 'You have been covered for pilot's coverage.' And he said 'Well, I have been flying just about every day.' And he said 'What's this over here?' And I said that the 'Yes' right there wouldn't make any difference, because he was under binder, and it was just a mere formality of getting the document or the policy to him.

"I did not know whether the Continental Casualty Company would indorse it. If they indorsed it, they didn't need this application; if they wanted to rewrite a new policy, then they would take this application and rewrite a new policy and this would become a part of the policy.

"And after that Mr. Holmes was satisfied with that, and I reaffirmed to him at that time that 'You are covered flying as a pilot.'

"The Court: Is that what you stated to him?

"The Witness: Yes, sir.

"Mr. Cox: All right, now.

"The Court: Did he sign the application, or had it already been signed?

"The Witness: No, sir, he signed it that night."

The next day, February 21, Oliver Wendell Holmes was killed while flying as a pilot, and on this date Musgrove had the application forms on his desk.

Cadenhead took the application and pilot's history form to Atlanta on February 25 and there met with Holland. Holland testified that, during that meeting and also during a telephone conversation that day with Musgrove while Cadenhead was in Holland's office, neither Cadenhead nor Musgrove made any reference to or discussed the oral binding of insurance as to Holmes. However, Cadenhead testified that he told Holland on this occasion that Musgrove had told Holmes that he was covered and that Holland did not then deny that Musgrove had the authority to bind Holmes.

About a week later, on March 4, Holland made an office memorandum concerning the above meeting and discussing the method of placing pilot coverage. This memorandum is printed in the margin.[4] It had penciled in at the bot-

4. "Memorandum
"To: File          March 4, 1957
"Oliver Wendell Holmes
"AA-108708
"Monday, February 25, 1957 Mr. William R. Cadenhead of the Musgrove Insurance Agency, Florence, Alabama came to see me asking if I had read in the papers that the above policyholder had been killed in an air crash. I was not aware of the tragedy. But I did know about Mr. Holmes interest in extending his Aviation Division passenger accident policy to include piloting of certificated aircraft.
"Mr. Cadenhead and his employer Mr. W. T. (Barney) Musgrove were not approaching us with demands, just to ask advice.
"Here is the chronology of the situation:
"A 908 policy was issued in early 1956 providing passenger coverage in airworthiness aircraft, our A-3 program.
"On January 4, 1957 Bill Cadenhead wrote a short letter asking about ridering the policy to include piloting for Mr. Holmes. I answered that it probably would be difficult but probably possible to extend the $50,000 principal sum which he already had to include pilot. I said that Mr. Holmes would have to complete a new application and a Pilot History form.
"I heard nothing further until February 25, 1957. However, February 20, 1957 Mr. Musgrove obtained from Mr. Holmes a Pilot History form properly completed and a Special Risks Division tissue application which was to have accompanied the Pilot History form for Aviation Division underwriting. Of course, the application used asked the

tom thereof: "Activity toward greater Continental production in this agency is greater than ever."

Thereafter, upon a denial of coverage by Continental Casualty Company, this suit followed.

Plaintiff's theory of the case rests upon the authority of the agent to effect a policy of insurance by an oral binder or by an oral contract of insurance, concluding that if sufficient authority existed in the agent Musgrove to bind the Company, it is immaterial for plaintiff's recovery whether the authority be actual (express or implied) or apparent (ostensible). Plaintiff also proceeds on the collateral theory that Musgrove was a *general agent* for the Company which position automatically gave him the power to orally bind the Company in various ways. In presenting this double-barreled approach, the plaintiff claims that Musgrove had authority whether he is found to be a general agent or something less, such as a soliciting agent.

■■■ Appellant's first and second specifications of error rest upon the re-

fusal of the trial court to grant a motion for a directed verdict made at the close of all the testimony and the refusal to grant a judgment notwithstanding the verdict. In reviewing the latter motion, as well as the first, we must determine if the record contains evidence of "probative facts capable of supporting, with reason," the verdict; for if it does, the verdict must stand.[5] Another similar test to review jury verdicts is that if there is *any substantial evidence* which supports the verdict, it must stand.[6] "Substantial evidence" has been best defined by Chief Justice Hughes as follows: "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[7] With these premises in mind, we hold that appellant's first two specifications of error are well taken as there was no substantial evidence that Musgrove had either actual or apparent authority to orally bind Continental Casualty Company.

■■■ We state at the outset[8] that the test to determine whether a general

usual question, which was answered, about no insurance being effective until a policy could be issued.

"Mr. Cadenhead brought these two forms to my office on February 25, and we agreed that there was no binding for any part of $50,000 which Mr. Holmes was trying to place. I told Mr. Cadenhead that our limit for the 150 hours Mr. Holmes' Pilot History form showed is $10,000 and that while I could have bound on the information in the Pilot History form $10,000 pilot coverage I could not have gone higher. I told him that I would have answered these two forms if they had been presented to me for underwriting with an offer to help place the other $40,000 to $50,000 requirement with friendly competitor. I would have offered to bind the $10,000 we might have written if the agent had confirmed in some way.

"Mr. Cadenhead left satisfied.

  "Herbert V. Holland Jr."

5. Myers v. Reading Co., 1947, 331 U.S. 477, 485, 67 S.Ct. 1334, 1339, 91 L.Ed. 1615. See, also, Thomas v. Atlantic Coast Line Ry. Co., 5 Cir., 1955, 223 F.2d 1, 4; Reuter v. Eastern Air Lines, 5 Cir., 1955, 226 F.2d 443, 446.

6. Aetna Life Ins. Co. v. Ward, 1891, 140 U.S. 76, 91, 11 S.Ct. 720, 35 L.Ed. 371; Lancaster v. Collins, 1885, 115 U.S. 222, 6 S.Ct. 33, 29 L.Ed. 373.

7. Consolidated Edison Co. v. National Labor Relations Board, 1938, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126. While this was an administrative case, the rule stated is applicable as well to jury verdicts.

8. The general statements following in the body of the opinion are paraphrased from 16 Appleman, Insurance Law & Practice, § 8691, p. 101, and are correct statements of both general insurance law and Alabama case law. This section states in part:

  "A great deal of confusion has arisen in the law of principal and agent, in so far as insurance contracts are concerned, by the loose terminology employed by many courts. Often, in their desire to find a waiver or estoppel, they have used a double edged reasoning, stating that because an agent does thus and so, he is a general agent, and because he is a general agent, he can do many other things in addition thereto. It is true, as will be shown later, that a general agent can

agency exists, in both Alabama case law and in general insurance law, is whether the agent "has the power to bind the insurer by his contract of insurance, or to issue policies on his own initiative, or to accept risks, and if the agent has actual authority to do these things, he is a general agent";[9] he may then bind the company in other ways, such as by oral contract, by waiving certain policy or application provisions and the like.[10] The general agent whose authority is limited in some way or an agent who is, by certain limitations, less than a general agent may also bind his principal in the above ways as though he were a general agent by apparent or ostensible authority through the doctrines of waiver, estoppel, or ratification, and, of course, the injured party must have relied upon this apparent authority in some way to his detriment.[11] He may also be less than

bind the insurer in many ways which a soliciting agent can not. It is important, however, to find a precise and exact test which will be susceptible of easy application. That test is whether or not the agent has the power to bind the insurer by his contract of insurance, or to issue policies on his own initiative, or to accept risks, and if the agent has actual authority to do these things, he is a general agent; if he cannot place coverage in effect, but can merely initiate negotiations therefor, he is not a general agent."

[Thus far, we agree wholly with Appleman's text. However, in the following portion, we express some doubt as to the pragmatic statements that a general agent can be created only by actual authority. It seems to us, where the third person relies to his detriment upon the apparent or ostensible authority of an agent and this authority is that normally of a general agent, the agent is, for that transaction, a general agent in the normal sense of that term and the insurer may be bound through the doctrine of ratification, estoppel, or waiver. However, these distinctions may be based more on legal gymnastics or on semantics than on disagreement of legal principles.]

"It is important not to reason backward in applying such a test. Thus, to take a soliciting agent who can merely solicit applications, deliver policies, or do other acts, and say brashly that he was apparently vested with ostensible authority to bind the insurer by his contract, that the insured was justified in relying thereon, that the agent was, therefore, a general agent, and because of that had the power to bind the insurer by his contracts, is a mere circumlocution of logic which would permit the court in any case desired to find a general agency. A general agency cannot be based upon implied, apparent, or ostensible authority. There must be actual authority to bind the insurer by the issuance of a policy or the completion of a contract. If such

actual authority exists, the other powers of a general agent necessarily co-exist upon which the insurer can be bound in other ways. If such actual authority does not exist, the agent is not a general agent, regardless of his ostensible powers, and the insurer could be bound by his contracts of insurance only through the doctrines of waiver, estoppel, or ratification. If this distinction and definition is borne in mind, and the few decisions when are squarely erroneous are dropped into limbo, little difficulty can arise."

9. Ibid. The test to determine general agency in Alabama law is the same. See Liberty Nat. Life Ins. Co. v. Staggs, 1942, 242 Ala. 363, 6 So.2d 432; United Burial & Ins. Co. v. Collier, 1931, 24 Ala.App. 546, 139 So. 104, certiorari denied, 224 Ala. 57, 139 So. 106; Robinson v. Aetna Ins. Co., 1901, 128 Ala. 477, 30 So. 665. See also, Piedmont Fire Ins. Co. v. Tierce, 1944, 245 Ala. 415, 17 So.2d 133, 136, and Bankers & Shippers Ins. Co. of New York v. Blackwell, 1954, 260 Ala. 463, 71 So.2d 267.

10. 16 Appleman, op. cit. supra. E.g., See Simpson Sales Co. v. British Gen. Ins. Co., 1952, 257 Ala. 289, 58 So.2d 591, where a territorial limitation upon the authority of a *general agent* does not bind an insured who has no notice of the agency limitation and deals with the agent to his harm; Piedmont Fire Ins. Co. v. Tierce, 1944, 245 Ala. 415, 17 So. 2d 133, where general agent of fire insurance company waived policy provisions; United Burial & Ins. Co. v. Collier, note 9, supra, where a general agent could bind the company by an oral contract to insure; United States Life Ins. Co. v. Lesser, 1900, 126 Ala. 568, 28 So. 646, where a soliciting agent's authority was extended by parol to that of a. general agent and he then waived a provision of the policy regarding payment of premium.

11. 16 Appleman, op. cit. supra; United Burial & Ins. Co. v. Collier, note 9, supra;

a general agent (such as a soliciting agent) and have actual authority to bind the company by oral binders or contracts in certain types of insurance.[12]

## I. ACTUAL AUTHORITY.

### (a) General Agent.

■ Therefore, if Musgrove had the power to bind the Company "by his contracts of insurance, or to issue policies on his own initiative, or to accept risks," or if the Company designated Musgrove to be a general agent by some action or manifestation, then he would be a general agent with the power to bind the Company in the manner claimed by Mrs. Holmes. It is elementary that *actual authority* can only be created "by written or spoken words or other conduct of the principal which, reasonably interpreted, causes the agent to believe that the principal desires him to act on the principal's account."[13]

The facts which Mrs. Holmes vigorously insists establish by substantial evidence that Musgrove had authority as a general agent are discussed as follows:

■ First, Musgrove's testimony as to a telephone conversation in February or March of 1956 where Holland assured Musgrove that he would be a "full agent * * * to secure business" and would receive a "full agency commission," as quoted *supra*. This is appellee's strongest evidence. However, this conversation took place prior to the issuance to Musgrove of a license by the State Department of Insurance at a time when Musgrove was not an agent of the Company. The term "full agent" can only be reasonably construed as bringing into existence the status of principal and agent or employer and employee, not as conferring general agency powers upon Musgrove.

■ Second, the agent's certificate or license from the Superintendent of Insurance of the State of Alabama, authorizing Musgrove to act with the powers listed as "Miscellaneous Casualty, including Official Surety Bonds." Summarily, this certificate "is only evidence of the existence of the agency in some form." American Life Ins. Co. of Alabama v. Carlton, 1942, 242 Ala. 661, 8 So.2d 166, 169. See also, Liberty Nat. Life Ins. Co. v. Staggs, 1942, 242 Ala. 363, 6 So.2d 432, 433; American Life Ins. Co. of Alabama v. Aladdin Temple Ben. Ass'n, 1939, 238 Ala. 512, 191 So. 903.

■ Third, plaintiff's exhibit No. 13, which was a request from the Atlanta branch office to the General Office in Chicago of Continental Casualty Company to license Musgrove as an individual resident agent. Appellee places great emphasis upon paragraph 8 of this request. Paragraph 8 entitled "Applicant will report business through" is answered "Atlanta" as the branch office

Fidelity-Phoenix Fire Ins. Co. v. Ray, 1916, 196 Ala. 425, 72 So. 98; Ray v. Fidelity-Phoenix Fire Ins. Co., 1914, 187 Ala. 91, 65 So. 536; Robinson v. Aetna Ins. Co., 1901, 128 Ala. 477, 30 So. 665; National Life Ins. Co. v. Reedy, 1928, 217 Ala. 114, 115 So. 8; Liberty Nat. Life Ins. Co. v. Staggs, 1942, 242 Ala. 363, 6 So.2d 432, 433.

12. 16 Appleman, op. cit. supra. The typical examples are fire insurance agents. See, Tutton v. Liverpool & London & Globe Ins. Co., 1939, 237 Ala. 230, 186 So. 551, 556; Sun Ins. Office of London v. Mitchell, 1914, 186 Ala. 420, 65 So. 143, 145. For a distinction between agents of fire and life insurance companies, see American Life Ins. Co. of Alabama v. Aladdin Temple Ben. Ass'n,

1939, 238 Ala. 512, 191 So. 903, 906. See also, Bankers & Shippers Ins. Co. of New York v. Blackwell, 1954, 260 Ala. 463, 71 So.2d 267.

13. This basic rule is succinctly stated in Section 26, Restatement of Agency, Second:

"§ 26. *Creation of Authority; General Rule*

"Except for the execution of instruments under seal or for the performance of transactions required by statute to be authorized in a particular way, authority to do an act can be created by written or spoken words or other conduct of the principal which, reasonably interpreted, causes the agent to believe that the principal desires him so to act on the principal's account."

and "Musgrove Insurance Agency" as the General Agency or Agency. The pertinent portions of this application are reported in the margin.[14] Holland testified unequivocally that the information under paragraph 8 was for the sole purpose of identifying any business produced by Musgrove as belonging to the Atlanta Branch Office, and this request never went out of the offices of the Com-

14.
"Date May 4, 1956

"1. Applicant

| "Name | Musgrove, | William | Thomas |
|---|---|---|---|
| | (Last) | (First) | (Middle) |

\* \* \* \* \* \* \* \* \* \* \* \* \*

"3. Request (Check appropriate box in each column.)

| XX | License | | XX | Individual |
|---|---|---|---|---|
| ☐ | Appointment | | ☐ | Corporation |
| | | | ☐ | Partnership |
| XX | Agent | | | |
| ☐ | Broker | | XX | Resident |
| ☐ | Special Representative | | ☐ | Non-Resident |

\* \* \* \* \* \* \* \* \* \* \* \* \*

"5. State in Which Applicant Is to Be Licensed
Alabama

"6. Lines or Authority of License to Be Issued (Specify each line of insurance requested.)

"Accident and Health

"7. License Status of Applicant (Check all applicable answers. Supply necessary information.)

Applicant: (Complete blanks directly below. Form will be returned if not answered fully.)

XX Already licensed in state specified in item 5 by reason of an appointment by another Company.

☐ Already licensed in state specified in item 5 by direct issuance of a license by the Insurance Department.

| Agent | | | Accident & Health |
|---|---|---|---|
| Applicant licensed as: Agent, Broker, etc. | | | Licensed to sell what kinds of insurance? |
| No Number License No. | 12/31/ , 1955 Date license issued? | | Accident & Health Licensed with what kind of Company? |

\* \* \* \* \* \* \* \* \* \* \* \* \*

"8. Applicant Will Report Business Through

(Complete Home Office and General Agent or Agency OR Branch and General Agent or Agency.)

Answer fully. This information essential to both the recording and renewal of licenses.
Form will be returned if incomplete.

| | Home Office |
|---|---|
| Name of Division | Division |
| Atlanta | Branch Office |
| Name of Branch | |
| Musgrove Insurance Agency | General |
| Name of Agent or Agency | Agent or Agency |
| First Nat'l Bank Bldg., Florence, Alabama | |
| General Agent or Agency Address" | |

pany and was not known to Musgrove until after this litigation was commenced and was never known to Holmes. However, even had Musgrove known of this instrument, the only manifest purpose of the instrument was a request to license an agent. We agree with appellant that it is without reason to interpret plaintiff's exhibit No. 13 as affording the basis of a finding that Musgrove was a general agent of the Company.

Fourth, Musgrove's authority to issue trip accident policies. While Holland testified that Musgrove had authority to issue these individual trip accident policies, the record indicates that he never issued one and did not receive any policy blanks until after February 27, 1957, the date on which a book of "VBT Travel-Accident Policies" was sent to Musgrove. Even had Musgrove received and made out these policies, it would not be evidence of general agency. These policies required no formal underwriting and would not, of course, have covered flying as a pilot or crew member. We agree with appellant that there is no substantial difference between this type of policy and the policies which can be procured from vending machines in all major airports. This type policy is characterized by the necessity of immediate issuance, and the basic differences between it and a Health and Accident Policy on a pilot for $50,000 for a year are so obvious as to warrant no further discussion.[15]

Fifth, certain correspondence which passed between Holland and Musgrove or Cadenhead. This correspondence has already been set out in this opinion. For instance, see Holland's letter of February 23, 1956, Holland's letter of May 7, 1956, Cadenhead's letter of January 4, 1957, Holland's letter of January 7, 1957, Holland's memorandum of March 4, 1957. Appellee insists that these items of correspondence, either individually or collectively, are substantive evidence of Musgrove's authority as a general agent. Again, we do not agree. A careful reading of the letters in the light most favorable to appellee indicates that they have no probative value in ascertaining or indicating Musgrove's authority to act as a general agent, but rather these letters indicate a limited agency.

Sixth, the fact that Holmes was given life insurance as a passenger effected by oral binder from 17th February until the middle of May, 1956. Appellee in brief and in the court below insists that Musgrove orally bound the Company for this time and such fact is strong evidence of his authority to orally bind the Company on the contract in question. However, the record clearly shows that Holland and not Musgrove bound the coverage as to Holmes and Culver on February 17, 1956, after obtaining the necessary information from Queen Insurance Company and that this was confirmed to Musgrove by letter on February 23, 1956, which also contained the applications. The Company accepted the risk here. Further, Musgrove was not an agent of Continental Casualty Company on February 17, 1956.

Other pertinent facts, which are undisputed, showing the relationship between Musgrove and Continental Casualty Company are briefly as follows. During the period from February 17, 1956, through February 20, 1957, Musgrove or his agency did not have in possession any blank policies providing for aviation accident insurance or blank applications of Continental Casualty Company relating to such insurance, except the two original applications signed by Holmes and Culver and the second application signed by Holmes on February 20, 1957; and during this time, Musgrove handled no insurance business for Continental except those applications above. Holland, who was the only representative of Continental with whom Musgrove dealt, did not have authority from Continental to extend to an agent authority to bind normal aviation accident insurance (except trip policies) and did not have au-

15. These trip accident policies can perhaps be compared with certain fire policies where a soliciting agent has authority to bind his company orally or otherwise. See note 12, supra.

thority to authorize an agent to write policies covering flying as a pilot.

Musgrove did not receive any specific instructions from Holland concerning his agency and had no written agency contract with Continental other than the license issued by the Alabama Department of Insurance.

The undisputed evidence further showed that the underwriting in connection with applications for insurance of the type involved in this case was done either in Atlanta or Chicago. And it was not the practice during 1956 and 1957 of *any* company writing accident and health insurance in Alabama to give oral binders.

There was also undisputed evidence to show that Musgrove knew that he did not have actual authority to accept risks and make contracts for Continental and therefore was not a general agent. This evidence is: First, the two applications for coverage of Holmes and Culver while flying as passengers (which were sent to Musgrove for the signature of Holmes and Culver after an oral binder had been effected by Holland on the basis of the applications to Queen Insurance Company) contained the same question as the later application for pilot coverage, which was "Do you understand and agree that no insurance will be effected until the policy is issued?" Second, the two original policies issued on the above applications which insured Holmes and Culver while flying as passengers had as a normal policy provision the following:

> "This policy, including the endorsements and the attached papers, if any, constitutes the entire contract of insurance. No change in this policy shall be valid until approved by an executive officer of the Company and unless such approval be endorsed hereon or attached hereto. No agent has authority to change this policy or to waive any of its provisions."

Third, the application for pilot coverage signed by Holmes on February 20, 1957, stated: "12. Do you understand and agree that no insurance will be effected until the policy is issued?" This was answered, "Yes." Fourth, Musgrove had in his possession a pamphlet from Continental captioned "This Is Max" and relating to policies covering passengers in certain specified aircraft. This pamphlet limited the authority of agents by providing:

> "Binding—Regular Max: No agent has authority to bind coverage. Policies are to be dated effective on the date the issuing office approves application. (See question #12 on app SRZ–1171–B.)"

We also place some emphasis on the fact that Cadenhead, in his letter to Holland of January 4, 1957, merely asked for application forms for pilot coverage and did not mention that Musgrove had orally bound the Company for $50,000, knowing that Musgrove had assured Holmes of coverage. Again, after receiving Holland's letter of January 7, 1957 (which stated, "We will be delighted to entertain Mr. Holland's application for Pilot Coverage" and expressed doubt as to a $50,000 pilot's coverage), Cadenhead did not advise Holland of Musgrove's oral binder of January 3.

We are of the opinion that all of the evidence in this case can only show that Musgrove was merely a "local" or "resident" agent, having the powers normally conferred on a "soliciting" agent with no actual authority to bind the Company by oral contract or binder, and that his actions in assuring Holmes of immediate coverage were clearly without the scope of his actual authority. There were no "written or spoken words or other conduct of Continental Casualty Company which, reasonably interpreted, caused Musgrove to believe that Continental desired him to act on Continental's account as a general agent." [16]

---

16. Paraphrased from Restatement, Agency, Second, § 26, note 13, supra.

### (b) Soliciting Agent.

▮ Anticipating that the evidence might not meet the requirement of showing a general agency, appellee alternatively alleges that Musgrove's authority as a soliciting agent was broad enough to effect an oral binder of this sort, since

> "* * * almost all soliciting agents are now given the power of temporary binder to protect the insured while his application is being considered by the company for acceptance or rejection." 16 Appleman, Insurance Law and Practice, § 8691, p. 105.

This statement is taken out of context and refers to a fire insurance agent's power to issue ten-day binders which are "more or less automatic, and ministerial in their nature." An analogous power which Musgrove had was the issuance of the individual trip accident policies. However, neither of these even resemble the general agent's power of issuing policies, accepting risks, and other acts involving the "exercise of selection and discretion." 16 Appleman, supra, p. 105.[17]

### II. APPARENT AUTHORITY.

▮ The countersuit below instituted against the Musgrove Insurance Agency and the two individuals as partners was based entirely on apparent authority of Musgrove to so act. Again, it is elementary that, before a principal may be bound by its agent's apparent or ostensible authority, the person dealing with the agent must have relied on the appearances in some way to his detriment.[18]

We agree with the appellant that, "in the case at bar, there was clearly no factual basis for the trial court to submit to the jury the question of apparent or ostensible authority of Musgrove, for the reason that there was no holding out by Continental Casualty Company of Musgrove as an agent authorized to make contracts of insurance." See 2 C.J.S. Agency § 96, pp. 1205–1206. While the evidence shows that the book of VBT travel-accident policies came into Musgrove's possession after Holmes' death, even if Holmes had known that Musgrove could have issued these trip policies (there was no evidence on this), the policies themselves would have put Holmes on notice that they did not cover a pilot or crew member or anything other than trip insurance. See, Great American Casualty Co. v. Eichelberger, Tex. Civ.App., 37 S.W.2d 1050; Hartline v. Mutual Benefit Health & Accident Ass'n, 5 Cir., 1938, 96 F.2d 174.

▮ According to Musgrove's testimony, Holmes twice relied on Musgrove's assurance that he was covered by oral binder, once on January 3 and again on January 20, but this reliance cannot impose liability on the Company as there is a complete absence of actual or apparent authority.

The judgment is therefore reversed and the cause remanded with directions to enter judgment for the defendant. See 28 U.S.C.A. § 2106.

Reversed and remanded with directions.

---

17. See notes 12 and 15, supra.

18. See cases in note 11, supra. Section 27, Restatement of Agency, Second, states:

"§ 27. *Creation of Apparent Authority: General Rule*

"Except for the execution of instruments under seal or for the conduct of transactions required by statute to be authorized in a particular way, apparent authority to do an act is created as to a third person by written or spoken words or any other conduct of the principal which, reasonably interpreted, causes the third person to believe that the principal consents to have the act done on his behalf by the person purporting to act for him." See also, 16 Appleman, supra, § 8674.